[No. B191166. Second Dist., Div. Five. May 17, 2007.]

SWAB FINANCIAL, LLC, Plaintiff and Respondent, v. E*TRADE SECURITIES, LLC, Defendant and Appellant.

COUNSEL

Morgan, Lewis & Bokius, Michael J. Lawson, Thomas M. Peterson, Joseph E. Floren, Jonathan M. Degooyer and Umung D. Varma for Defendant and Appellant.

Siciliano & Weeks, Nicholas A. Siciliano and David E. Weeks for Plaintiff and Respondent.

OPINION

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, E*Trade Securities, LLC, appeals from an order vacating an arbitration award against plaintiff, SWAB Financial, LLC. The trial court found plaintiff's rights were substantially prejudiced by the National Association of Securities Dealers arbitrators' failure to postpone the arbitration hearing upon sufficient cause being shown. We conclude the arbitrators did not abuse their discretion in refusing to continue the arbitration hearing. Accordingly, we reverse the order vacating the arbitration award.

## II. BACKGROUND

### A. Arbitration Agreement

Defendant is a registered securities broker-dealer and a member of the National Association of Securities Dealers. Plaintiff opened a securities brokerage account with defendant on March 21, 2001. Plaintiff's brokerage account was governed by a customer agreement. The March 21, 2001 customer agreement provided for arbitration of disputes: "31. a. Arbitration Disclosures. The following is a required disclosure for all brokerage agreements containing a pre-dispute arbitration provision: [¶] (1) Arbitration is final and binding on the parties. [¶] (2) The parties are waiving their right to seek remedies in court, including the right to jury trial. [¶] (3) Pre-arbitration discovery is generally more limited than and different from court proceedings. [¶] (4) The arbitrator's award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of

rulings by the arbitrators is strictly limited. [¶] (5) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry. [¶] b. Arbitration Agreement. You agree to arbitrate any controversy between you and E*Trade or any of its officers, directors, employees, agents or affiliates arising out of or relating in any way to your Account, including but not limited to: (i) transactions of any kind made on your behalf by, through or with E*Trade . . . ; (ii) the performance, construction or breach of this Agreement or any other written agreement between you and E*Trade. Such arbitration shall be conducted in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. You understand that judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof."

Several National Association of Securities Dealers rules in effect at the time of the arbitration have bearing on the determination of this appeal. National Association of Securities Dealers Code of Arbitration Procedure Rules,[1] rule 10106 states, "No party shall, during the arbitration of any matter, prosecute or commence any suit, action, or proceeding against any other party touching upon any of the matters referred to arbitration pursuant to this Code." Under rule 10328(c), "After a panel [of arbitrators] has been appointed, no new or different pleading may be filed except . . . with the panel's consent." Pursuant to rule 10319(a), the National Association of Securities Dealers arbitrators exercise discretion in deciding whether to postpone a hearing: "The arbitrator(s) may, in their discretion, adjourn any hearing(s) either upon their own initiative or upon the request of any party to the arbitration." Rule 10318 governs failures to appear: "If any of the parties, after due notice, fails to appear at a hearing or at any continuation of a hearing session, the arbitrators may, in their discretion, proceed with the arbitration of the controversy. In such cases, all awards shall be rendered as if each party had entered an appearance in the matter submitted."

### B. Plaintiff Initiates Arbitration

On May 6, 2002, plaintiff, then known as TSI Technologies, LLC, initiated the underlying arbitration proceeding against defendant. Plaintiff relied on the arbitration provision of the March 21, 2001 customer agreement. Plaintiff's claims arose out of its business dealings with Wendy Feldman Purner and her

---

[1] All further references to a rule are to the National Association of Securities Dealers Code of Arbitration Procedure.

company, San Diego Asset Management, Inc. The May 6, 2002 statement of claims alleged that in dealing with Ms. Purner's company false representations were made by defendant. The May 6, 2002 statement of claims alleged defendant: made fraudulent statements in connection with a stock transaction between plaintiff and Ms. Purner's company; made negligent misrepresentations in connection with that stock transaction; fraudulently represented Ms. Purner's company-owned stock promised to plaintiff in a settlement agreement with her firm; made negligent misrepresentations as to Ms. Purner's company's ownership of the stock promised to plaintiff; breached its fiduciary duty to plaintiff; and violated Uniform Commercial Code section 4-214. Central to the dispute between plaintiff and defendant is an August 24, 2001 letter addressed to Ms. Purner. The August 24, 2001 letter was signed by two of defendant's employees, Jackie Bixby and Bobby Duerre. The August 24, 2001 letter states, "San Diego Asset Management[, Inc.] holds EMedsoft shares in excess of 21 million shares. . . ." Pursuant to its National Association of Securities Dealers dispute resolution arbitration uniform submission agreement, plaintiff agreed, in part, "The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claims, answers, and all related counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization." Defendant executed its own uniform submission agreement on July 12, 2002. Defendant also tendered a third party claim against Steven M. Goldberg, who had controlled plaintiff's account. A panel of three arbitrators was appointed. The first hearing in the arbitration was held on August 7, 2003.

Plaintiff also separately arbitrated claims against Ms. Purner and her company for: contract breach; fraud; unfair, unlawful, and fraudulent business practices; conversion; unjust enrichment; intentional interference with current economic relations; and intentional interference with prospective economic relations. An American Arbitration Association Commercial Arbitration Tribunal award was entered in plaintiff's favor and against Ms. Purner and her company on July 14, 2003. The arbitrator set forth 95 statements of fact and conclusions of law including: "During the year 2001, PURNER engaged in a scheme to fraudulently induce SWAB to transfer shares of . . . stock to [San Diego Asset Management, Inc.] without paying for the . . . stock and for purposes of stealing the consideration from SWAB without SWAB's knowledge . . ."; "PURNER assisted in the forgery of the August 24, 2001 letter from e*Trade . . . which states that [San Diego Asset Management, Inc.] had in excess of 21 million shares of [EMedsoft] stock in e*Trade accounts"; and

"PURNER fraudulently induced or conspired with an e\*Trade employee to prepare the August 24, 2001 letter . . ."; and, "At the time PURNER transmitted the August 24, 2001 letter to SWAB . . . , PURNER knew that the contents of the letter were false."

Defendant brought a motion to compel plaintiff to produce documents. The matter was set for hearing on October 24, 2003, but continued after plaintiff's counsel failed to appear. Plaintiff did not appear at arbitration hearings on December 15, 2003, and January 6, 2004. On January 8, 2004, defendant moved to dismiss plaintiff's claims with prejudice as a sanction for failing to produce documents. On February 13, 2004, the arbitrators conditionally denied defendant's motion to dismiss. The arbitration was set for September 13 through 17, 2004.

In June 2004, plaintiff filed a summary adjudication motion, which defendant opposed. In addition, on July 2, 2004, defendant filed a renewed motion to dismiss for failure to produce documents and for allegedly tampering with third party witnesses. These matters were heard on August 17, 2004. The arbitrators denied plaintiff's summary adjudication motion. They also denied defendant's motion to dismiss. The arbitrators ordered the arbitration to proceed as scheduled on September 13, 2004.

On August 20, 2004, plaintiff dismissed with prejudice the first, second, fifth, and sixth causes of action in its statement of claims—for fraud and negligent misrepresentation in stock transactions, fiduciary duty breach, and violation of Uniform Commercial Code section 4-214. The remaining claims were for fraud and negligent misrepresentation in connection with the business relationship between plaintiff and Ms. Purner's company. Plaintiff alleged defendant misrepresented that Ms. Purner's company owned certain shares of stock. This stock was promised to plaintiff under a settlement agreement with Ms. Purner's company.

On September 9, 2004, plaintiff filed an ex parte application to dismiss the arbitration proceeding without prejudice. Plaintiff desired to sue defendant in a court of law. Plaintiff advised it would not appear before the arbitration panel due to an unwaivable conflict of interest on the part of the arbitration panel's chair; moreover, plaintiff gave notice it would immediately file suit in the Los Angeles Superior Court to pursue a judicial remedy. At the same time, plaintiff cancelled scheduled depositions of defendant's witnesses. In addition, two of plaintiff's principals indicated they would not appear for scheduled depositions. Plaintiff also purported to revoke its uniform

submission agreement. The arbitrator with the alleged conflict of interest denied such existed, but recused himself to avoid further delay in the arbitration. Further hearings were postponed pending assignment of a replacement arbitrator.

### C. *SWAB v. E\*Trade and NASD*, Case No. BC321354 (*SWAB I*)

On September 10, 2004, while its ex parte application to dismiss the arbitration proceeding was pending, plaintiff filed an action against defendant and the National Association of Securities Dealers in Los Angeles Superior Court. Plaintiff alleged defendant had been complicit in a securities fraud scheme perpetrated by Ms. Purner. The allegations against defendant centered on the August 24, 2001 asset verification letter signed by defendant's employees, Ms. Bixby and Mr. Duerre. Plaintiff further alleged that although it secured a judgment against Ms. Purner, it had not recovered any money from her. Moreover, plaintiff alleged in part: "At the time that SWAB pursued its claims against Ms. [Purner], SWAB did not know that Ms. [Purner] had secret conversations with E\*Trade representatives who conspired with her to defraud SWAB. SWAB now has possession of E\*Trade's own tape-recorded conversations with Ms. [Purner] that indisputably show E\*Trade's liability for fraud." Plaintiff's complaint contained causes of action for: fraud and negligent misrepresentation against defendant; a declaration its causes of action were not subject to arbitration due to an arbitrator's undisclosed unwaivable conflict of interest; and rescission of its uniform submission agreement.

On September 17, 2004, defendant and the National Association of Securities Dealers removed the *SWAB I* action to the federal district court. Plaintiff then dismissed the National Association of Securities Dealers from the federal court complaint. On October 27, 2004, defendant filed a petition to compel plaintiff to return to the National Association of Securities Dealers arbitration and to stay any further proceedings in *SWAB I*. Defendant argued plaintiff was required to arbitrate under: the customer agreement; the National Association of Securities Dealers uniform submission agreement; and plaintiff's amended National Association of Securities Dealers uniform submission agreement (changing the claimant's name from TSI Technologies & Holdings, LLC, to SWAB). On December 29, 2004, Chief Judge Consuelo B. Marshall granted defendant's motion to compel arbitration and to stay *SWAB I*. Chief Judge Marshall concluded: the uniform submission agreements constituted binding arbitration agreements between plaintiff and defendant and covered the claims at issue in the lawsuit; plaintiff's assertion the pending arbitration proceeding was unfair and biased was not a basis to rescind the arbitration agreement; the National Association of Securities

Dealers rules provided for relief in the event of arbitrator bias or unfairness; and the allegedly biased arbitrator had already recused himself.

### D. *SWAB v. NASD*, Superior Court Case No. BC322508<br>(*SWAB II*)

On October 5, 2004, plaintiff filed a new action against the National Association of Securities Dealers in the Los Angeles Superior Court. (*SWAB Financial, LLC v. National Association of Securities Dealers, Inc.* (Super. Ct. L.A. County, No. BC322508).) Plaintiff alleged unlawful business acts or practices in that the National Association of Securities Dealers had, in the arbitration with defendant, among other things: appointed an arbitrator with an unwaivable conflict of interest; failed to implement procedures to uncover such conflicts of interest; coerced and commanded claimants to sign submission agreements on threat of dismissal of claims; failed to provide relief upon notification of conflicts; ratified the conflicted arbitrator's access to confidential and privileged information; condoned the conflicted arbitrator's issuance of questionable orders; and permitted the conflicted arbitrator to sign orders for subpoenas for consumer records in violation of law. Plaintiff sought to enjoin the National Association of Securities Dealers from conducting arbitrations in California until it established procedures to ensure neutrality. On October 22, 2004, the National Association of Securities Dealers removed the action to the United States District Court for the Central District of California. On January 10, 2005, however, plaintiff voluntarily dismissed the *SWAB II* action without prejudice.

### E. The Plaintiff-defendant Arbitration Resumes

On March 14, 2005, an arbitration hearing was held on plaintiff's pending ex parte application to dismiss the arbitration and file a lawsuit. The arbitrators denied plaintiff's dismissal request. The arbitration was set for September 19, 2005. This was more than one year after the original arbitration date—September 13, 2004.

### F. *SWAB v. E\*Trade*, Case No. BC330571 (*SWAB III*)

One week later, on March 21, 2005, plaintiff filed another superior court action against defendant, together with others, for unlawful, fraudulent, and unfair business practices in violation of Business and Professions Code section 17200. (*SWAB Financial, LLC v. E\*Trade Securities, Inc.* (Super. Ct. L.A. County, No. BC330571).) Plaintiff's allegations against defendant centered on the August 24, 2001 asset verification letter signed by defendant's employees, Ms. Bixby and Mr. Duerre, concerning Ms. Purner's company. Plaintiff

alleged the August 24, 2001 asset verification letter signed by Ms. Bixby and Mr. Duerre contained false representations.

On April 25, 2005, defendant filed a petition to compel plaintiff to arbitrate these claims. Defendant also filed a motion to stay the superior court proceedings. Defendant's proposed order stated: "1. E*Trade['s] Petition to Compel is GRANTED; and [¶] 2. Plaintiff is directed to submit its alleged claims against [E*Trade] as set forth in the Complaint in this action to the ongoing arbitration currently pending before the National Association of Securities Dealers . . . ." Plaintiff opposed the petition and motion. Plaintiff argued there was no valid agreement to arbitrate the Business and Professions Code section 17200 claims. On June 7, 2005, defendant's petition to compel arbitration of the controversy and its motion to stay the action were granted. The trial court concluded: "The Petition to Compel Arbitration is GRANTED. . . . The plaintiff's customer agreement with E*Trade contains an arbitration clause that controls this action, because the underlying transaction was to have been made through the plaintiff's E*Trade account. The plaintiff has also twice agreed to arbitrate other causes of action arising out of the same facts, and those arbitration agreements are not expressly limited to the plaintiff's claims for fraud and negligent misrepresentation. . . . [¶] The Motion to Stay Proceedings is GRANTED. . . . Because the plaintiff's entire action revolves around an issue to be determined at arbitration (the defendants' fraud in issuing the asset verification letter), this action should be stayed as to all other defendants." Defendant was directed to prepare a written order. Sufficient time was provided for objections to the written order. Defendant submitted its proposed order. The parties stipulated plaintiff would file its objections by August 9, 2005. On August 9, 2005, plaintiff filed its objections. On August 15, 2005, a formal order was entered. That order states in part: "[T]he Petition to Compel Arbitration is granted. The Plaintiff is directed to submit its alleged claims against the E*Trade Defendants . . . to arbitration in accordance with its agreements to do so. All claims and proceedings in this action are stayed until such arbitration has been concluded." Plaintiff asserts it had no notice of the formal order until September 2, 2005.

### G. Plaintiff's Attempts to Amend Its Arbitration Claims and the Ensuing Arbitration Award

Rule 10328 governed amendment of claims. Under rule 10328(c), "After a panel [of arbitrators] has been appointed, no new or different pleading may be filed except . . . with the panel's consent." On August 12, 2005, before the trial court's formal order was entered, plaintiff notified the National Association of Securities Dealers it anticipated amending its claim to add the Business and Professions Code section 17200 allegations. Plaintiff's letter stated in

part: "The purpose of this letter is . . . to advise the [National Association of Securities Dealers] of events that have transpired subsequent to the last hearing . . . . [¶] On March 21, 2005, SWAB . . . filed a complaint in the Los Angeles Superior Court under . . . Business [and] Professions Code Section 17200 et seq. Among other entities, E*Trade . . . was named as a defendant. . . . [¶] On June 7, 2005, the Superior Court Judge heard a motion to compel arbitration of the new action by E*Trade . . . . That motion was granted. The parties are currently working to reach an appropriate order for the Superior Court Judge to execute. I expect that will occur in the next thirty (30) days. [¶] Since the new action is related to the alleged wrongful conduct by E*Trade . . . in the pending [National Association of Securities Dealers] arbitration, [SWAB] anticipates amending the existing claim to reflect the new causes of action. [¶] That being said, it is certain that the existing hearing dates for the arbitration, scheduled to commence on September 19, 2005, are simply unworkable. It is my recommendation that we keep the September 19, 2005 date on calendar as a status conference, at which time the parties and the arbitrators can discus[s] the impact of the new causes of action as well as any other relevant matters, including scheduling." Defendant opposed any continuance of the September 19, 2005 arbitration hearing date. Defendant also requested that the arbitration be dismissed. During a telephonic hearing on September 2, 2005 the arbitrators declined to rule on whether plaintiff's Business and Professions Code section 17200 claims would be heard in arbitration. The arbitrators noted plaintiff had not moved to amend its statement of claims and had not submitted a proposed amended statement of claims. The arbitrators further ordered that plaintiff's dismissal request was denied and the arbitration, with its current pleadings, would commence as scheduled on September 19, 2005.

On September 7, 2005, plaintiff filed a "renewed motion" to: "file an amended statement of claim[s] for violation of Section 17200;" consolidate the claim into the existing arbitration; and continue the September 19, 2005 arbitration date. A telephonic hearing was held on September 13, 2005. At the conclusion of that hearing, the arbitrators denied plaintiff's continuance motion "in its entirety." On September 16, 2005, the Friday before the scheduled Monday, September 19, 2005 arbitration hearing, at 4:40 p.m., plaintiff gave notice of nonappearance at the arbitration proceeding.

The arbitration hearing went forward on September 19, 2005. Plaintiff was not present. As noted above, rule 10318 states: "If any of the parties, after due notice, fails to appear at a hearing or at any continuation of a hearing session, the arbitrators may, in their discretion, proceed with the arbitration of the controversy. In such cases, all awards shall be rendered as if each party had entered an appearance in the matter submitted." Defendant presented documentary evidence and argument and requested an award in its favor. Later that day, the National Association of Securities Dealers arbitrators

issued their award. The award states in part: "Neither [plaintiff] nor Third-Party Respondent Steven M. Goldberg made an appearance at the evidentiary hearing on September 19, 2005. Upon review of the file and the representations made by E*Trade Securities, the undersigned Panel determined that [plaintiff] and [Mr. Goldberg] received due notice of the hearing, and that arbitration of the matter would proceed without said parties present, in accordance with the [National Association of Securities Dealers] Code of Arbitration Procedure . . . . [¶] . . . [¶] AWARD [¶] After considering the pleadings, testimony, and evidence presented at the hearing, the Panel decided in full and final resolution of the issues submitted for determination as follows: [¶] 1) [Plaintiff's] claims are denied in their entirety. [¶] 2) E*Trade Securities' Third-Party Claim against Third-Party Respondent Steven M. Goldberg is dismissed without prejudice. [¶] 3) The Panel's Order On E*Trade's Renewed Motion to Dismiss, including a request for sanctions, is moot. [¶] 4) All other relief requested and not expressly granted is denied."

### H. Proceedings in the Trial Court

Plaintiff filed a petition to vacate the arbitration award in the trial court on October 13, 2005. Plaintiff asserted in part that it suffered substantial prejudice because the arbitrators disallowed any amendment of the claims in arbitration and a continuance of the hearing. Plaintiff argued the arbitrators summarily, arbitrarily, and without explanation: refused to allow an amendment; denied a brief continuance; and ignored the trial court's order to decide the Business and Professions Code section 17200 claims in the pending arbitration. Defendant opposed the petition. Defendant argued plaintiff had failed to demonstrate any good cause for a continuance and there was no substantial prejudice. Defendant asserted there were numerous strong bases for the arbitrator's denial of the continuance motion including: the arbitration had been pending for more than three years; it had twice been continued; plaintiff had engaged in delaying tactics; and plaintiff offered no explanation for failing to seek leave to amend as to its Business and Professions Code section 17200 claims at an earlier time.

An initial hearing was held in the trial court on January 19, 2006. Plaintiff argued the arbitrators had sufficient cause to postpone the arbitration hearing because the trial court had ordered the Business and Professions Code section 17200 claims arbitrated. As to prejudice, plaintiff asserted: "[I]t seems to be obvious that you potentially have a res judicata or collateral estoppel effect on the [Business and Professions Code section 17200] claim that goes forward, you have the potential for multiple and inconsistent rulings, and you have the failure to resolve all the claims in violation of the single judgment rule." Defendant countered that prejudice to plaintiff arose from the failure to appear at the arbitration hearing, not from the denial of the continuance

request. The trial court ordered a second hearing to address whether plaintiff had requested a continuance in a timely manner. Following supplemental briefing by the parties, the second hearing commenced on February 21, 2006. At the conclusion of that hearing, the trial court granted plaintiff's petition to vacate the arbitration award.

The trial court filed a statement of decision and order granting plaintiff's petition to vacate the arbitration award on April 5, 2006. The trial court filed an amended statement of decision and order on April 26, 2006. The amended statement of decision and order provides: "Proof having been made to the satisfaction of this Court that the rights of [plaintiff] were substantially prejudiced by the failure of the arbitrators of the [National Association of Securities Dealers] to postpone the arbitration hearing upon sufficient cause being shown by [plaintiff] pursuant to [section] 1286.2[, subdivision] (a)(5), THE COURT FINDS AND ORDERS AS FOLLOWS: [¶] 1. On August 15, 2005, this Court ordered [plaintiff's] claims under [Business and Professions Code section 17200] to arbitration in the then pending arbitration before the [National Association of Securities Dealers] . . . . [¶] 2. Prior to being served with this Court's August 15, 2005 Order, [plaintiff] informed the [National Association of Securities Dealers] arbitrators in the then-pending arbitration . . . that this Court was in the process of finalizing its order, that plaintiff anticipated amending its Statement of Claim in the arbitration, and that [plaintiff] believed the September 19, 2005 evidentiary hearing date was unworkable; [¶] 3. [Plaintiff] was served with this Court's August 15, 2005 order on September 2, 2005; [¶] 4. [Plaintiff] diligently moved the [National Association of Securities Dealers] arbitrators on September 2, 2005 and September 7, 2005 to amend its statement of claim to add claims under [Business and Professions Code section] 17200 and to continue the September 19, 2005 evidentiary hearing date; [¶] 5. The foregoing facts constituted sufficient cause for the arbitrators to postpone the evidentiary hearing set for September 19, 2005, yet the [National Association of Securities Dealers] arbitrators denied [plaintiff's] requests for a postponement; [¶] 6. The [National Association of Securities Dealers] arbitrators' refusal to postpone the arbitration hearing date substantially prejudiced [plaintiff's] rights; [¶] 7. The award made by the [National Association of Securities Dealers] arbitrators on September 19, 2005 . . . is VACATED; [¶] 8. The Court makes this order under the authority of . . . section 1286.2[, subdivision] (a)(5) because the arbitrators refused to postpone the arbitration hearing upon sufficient cause being shown; and [¶] 9. [Plaintiff] shall recover its costs associated with the Petition to Vacate in an amount hereafter to be determined."

## III. DISCUSSION

### A. Appealability

Code of Civil Procedure section 1294 provides in part: "An aggrieved party may appeal from: [¶] . . . [¶] (c) An order vacating an [arbitration] award unless a rehearing in arbitration is ordered." Here, the superior court vacated the arbitration award, but did not order a rehearing in arbitration. Therefore, the order is appealable. (*Marcus & Millichap Real Estate Investment Brokerage Co. v. Woodman Investment Group* (2005) 129 Cal.App.4th 508, 514–515 [28 Cal.Rptr.3d 584]; *Michael v. Aetna Life & Cas. Ins. Co.* (2001) 88 Cal.App.4th 925, 932–933 [106 Cal.Rptr.2d 240].)

### B. The United States Arbitration Act

■ This case involves securities transactions in interstate commerce and is governed by chapter 1 of the United States Arbitration Act. (9 U.S.C. § 1 et seq.; *Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1366, fn. 4 [131 Cal.Rptr.2d 524]; *Strotz v. Dean Witter Reynolds, Inc.* (1990) 223 Cal.App.3d 208, 212, fn. 3 [272 Cal.Rptr. 680], overruled on another point in *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 407 [58 Cal.Rptr.2d 875, 926 P.2d 1061]; *Lewis v. Prudential-Bache Securities, Inc.* (1986) 179 Cal.App.3d 935, 940 [225 Cal.Rptr. 69].) However, the United States Arbitration Act, chapter 1, does not preempt California's statutory grounds for vacating an arbitration award. (*Ovitz v. Schulman* (2005) 133 Cal.App.4th 830, 848–855 [35 Cal.Rptr.3d 117]; *Hotels Nevada, LLC v. Bridge Banc, LLC* (2005) 130 Cal.App.4th 1431, 1438–1439 [30 Cal.Rptr.3d 903]; *Siegel v. Prudential Ins. Co.* (1998) 67 Cal.App.4th 1270, 1272, 1290–1291 & fn. 7 [79 Cal.Rptr.2d 726].) In cases falling under the United States Arbitration Act, chapter 1, California courts are not required to apply title 9 United States Code section 10, which governs vacating arbitration awards under the federal act. (*Siegel v. Prudential Ins. Co., supra,* 67 Cal.App.4th at p. 1290; see *Muao v. Grosvenor Properties, Ltd.* (2002) 99 Cal.App.4th 1085, 1090–1092 [122 Cal.Rptr.2d 131].) But, as we will note, federal court decisions construing the vacatur provisions of the United States Arbitration Act, although not controlling, are relevant to the issues raised by the parties.

### C. Standard of Review

■ As a general rule, the merits of an arbitrator's decision are not subject to judicial review. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899]; *Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 407–408 [29 Cal.Rptr.3d 881].) The Supreme Court has

explained: "[I]t is the general rule that, 'The merits of the controversy between the parties [to a private arbitration agreement] are not subject to judicial review.' [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.] [¶] Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at p. 11; see *O'Malley v. Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 111–112 [308 P.2d 9].)

■ Code of Civil Procedure section 1286.2 (section 1286.2), subdivision (a), which sets forth grounds for vacating an arbitration award, is an exception to the general rule precluding judicial review. Section 1286.2, subdivision (a)(5) requires a court to vacate an arbitration award when a postponement request supported by sufficient cause is refused and the moving party suffers substantial prejudice. Section 1286.2, subdivision (a)(5), states, "[T]he court shall vacate the award if the court determines any of the following: [¶] . . . [¶] . . . The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor . . . ." ■ The Courts of Appeal have held, "[Section 1286.2, subdivision (a)(5) is] a safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case." (*Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 439 [22 Cal.Rptr.2d 376]; accord, *Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1111 [47 Cal.Rptr.2d 650].)

We review the trial court's order vacating the arbitration award de novo. (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 55–56 [16 Cal.Rptr.3d 687]; *Reed v. Mutual Service Corp., supra,* 106 Cal.App.4th at pp. 1364–1365; *Schlessinger v. Rosenfeld, Meyer & Susman, supra,* 40 Cal.App.4th at p. 1103, fn. 10.) However, we apply the substantial evidence test to the trial court's ruling to the extent it rests upon a determination of disputed factual issues. (*Malek v. Blue Cross of California, supra,* 121 Cal.App.4th at pp. 55–56; *Reed v. Mutual Service Corp., supra,* 106 Cal.App.4th at pp. 1364–1365; see also *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 [36 Cal.Rptr.2d 581, 885 P.2d 994].) Here, plaintiff's continuance request rested on the undisputed procedural history of the case. The trial court's ruling did not turn on any factual dispute.

■ Of course, the decision whether to grant a continuance lies in the first instance with the arbitrator. Under rule 10319(a), the arbitrators exercised discretion in deciding whether to postpone the hearing. Rule 10319(a) states: "The arbitrator(s) *may, in their discretion,* adjourn any hearing(s) either upon their own initiative or upon the request of any party to the arbitration."

(Italics added.) Similarly, Code of Civil Procedure section 1282.2 provides, "Unless the arbitration agreement otherwise provides, or unless the parties to the arbitration otherwise provide by an agreement which is not contrary to the arbitration agreement as made or as modified by all the parties thereto: [¶] . . . [¶] (b) The neutral arbitrator may adjourn the hearing from time to time as necessary. On request of a party to the arbitration for good cause, or upon his own determination, the neutral arbitrator *may* postpone the hearing to a time not later than the date fixed by the agreement for making the award, or to a later date if the parties to the arbitration consent thereto." (Italics added.) ▪ The word "may" is permissive rather than mandatory. (*Jones v. Catholic Healthcare West* (2007) 147 Cal.App.4th 300, 307 [54 Cal.Rptr.3d 148]; *Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 208 [25 Cal.Rptr.3d 426].)

▪ Title 9 of the United States Code, section 10, is the United States Arbitration Act vacatur provision. Title 9, United States Code, section 10(a)(3) is similar to section 1286.2, subdivision (a)(5). The federal statute states: "(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—[¶] . . . [¶] (3) [w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown . . . ." (9 U.S.C. § 10(a)(3).) Because the federal and state statutes on this point are similar, we may consider persuasive federal authority. (*Reed v. Mutual Service Corp., supra,* 106 Cal.App.4th at p. 1366, fn. 4.) Under the federal vacatur statute, the "misconduct" in refusing to postpone must amount to the denial of a fair hearing. (*Laws v. Morgan Stanley Dean Witter* (5th Cir. 2006) 452 F.3d 398, 399–400; *El Dorado School Dist. # 15 v. Continental Cas.* (8th Cir. 2001) 247 F.3d 843, 847–848.) The federal circuit courts review the arbitrator's decision de novo and determine whether the arbitrator acted within his or her discretion. (*Laws v. Morgan Stanley Dean Witter, supra,* 452 F.3d at pp. 399–400; *ARW Exploration Corp. v. Aguirre* (10th Cir. 1995) 45 F.3d 1455, 1463–1464.) The federal courts will not interfere in an arbitrator's postponement decision if any reasonable basis exists for the arbitrator's ruling. (*Laws v. Morgan Stanley Dean Witter, supra,* 452 F.3d at pp. 400–401; *El Dorado School Dist. # 15 v. Continental Cas., supra,* 247 F.3d at p. 848; *Scott v. Prudential Securities, Inc.* (11th Cir. 1998) 141 F.3d 1007, 1016; *DVC-JPW Investors v. Gershman* (8th Cir. 1993) 5 F.3d 1172, 1174; *Schmidt v. Finberg* (11th Cir. 1991) 942 F.2d 1571, 1574–1575.) In *ARW Exploration Corp. v. Aguirre, supra,* 45 F.3d at pages 1463–1464, the Court of Appeals for the Tenth Circuit held: "Because the primary purpose for the federal policy of favoring arbitration is to promote the expeditious resolution of disputes, a court's review of the arbitrator's decision to postpone or not postpone the hearing is quite limited. [Citations.] [¶] In this case, [d]efendants

failed to demonstrate sufficient cause for postponing the hearings, and the arbitrator was clearly acting within the scope of his discretion in not continuing the hearing . . . ."

■ We conclude that when, as here, an arbitrator exercises discretion in denying a continuance request, there are two issues to be resolved in vacatur proceedings. First, the trial court must determine whether the arbitrator abused his or her discretion by refusing to postpone the hearing upon sufficient cause being shown. Second, if there was an abuse of discretion, the trial court must determine whether the moving party suffered substantial prejudice as a result. Moreover, on appeal from the trial court's order granting or denying a request to vacate the arbitration award, our review is de novo. In other words, in this case, we must consider whether the *arbitrators* abused their discretion and there was substantial prejudice in denying plaintiff's continuance motion. Only if the arbitrators abused their discretion and there was resulting prejudice could the trial court properly vacate the arbitration award. As noted, in the face of disputed evidentiary matters, we apply the differential substantial evidence test.

### D. The Arbitrators Did Not Abuse Their Discretion

■ We find no abuse of discretion by the arbitrators. To recap the central underlying procedural facts: plaintiff instituted the arbitration with defendant on May 6, 2002; the first arbitration hearing was held on August 7, 2003; the arbitration was set for September 13, 2004; on August 20, 2004, plaintiff dismissed four of the six claims pending against defendant; on September 9, 2004, four days before the arbitration was to begin, plaintiff advised it would not appear at the arbitration and sought permission to pursue judicial remedies; one day later, on September 10, 2004, plaintiff filed the *SWAB I* lawsuit against defendant and the National Association of Securities Dealers; on September 17, 2004, *SWAB I* was removed to federal court; plaintiff then dismissed the National Association of Securities Dealers from the action; on December 29, 2004, defendant's petition to compel arbitration and to stay *SWAB I* was granted; Chief Judge Marshall ruled there were binding arbitration agreements between plaintiff and defendant covering the claims in *SWAB I* and the arbitrator bias claims were to be resolved under National Association of Securities Dealers rules; meanwhile, on October 5, 2004, plaintiff filed a new superior court action, *Swab II*, against the National Association of Securities Dealers; the new action sought to enjoin all National Association of Securities Dealers arbitrations in California; on October 22, 2004, the National Association of Securities Dealers removed the action to the federal court; on January 10, 2005, plaintiff voluntarily dismissed the lawsuit; the parties reappeared in the plaintiff versus defendant arbitration; on March 14, 2005, plaintiff once again sought unsuccessfully to dismiss the arbitration it

had commenced and pursue a legal action; the arbitration was reset for September 19, 2005, more than one year after the original arbitration date—September 13, 2004; nevertheless, on March 21, 2005, plaintiff filed *SWAB III*; on June 7, 2005, the trial court granted defendant's petition to compel arbitration and stayed *SWAB III*; plaintiff then attempted unsuccessfully to amend its claims in arbitration to include Business and Professions Code section 17200 violations; the arbitrators refused to continue the September 19, 2005 hearing date; plaintiff failed to appear at the arbitration; and an award was entered in defendant's favor. Plaintiff's continuance request came: more than three years after it first initiated the arbitration; more than one year beyond the original arbitration date; after plaintiff had already once refused to appear at the arbitration hearing; and after plaintiff had twice brought legal actions against defendant, *Swab I* and *Swab III*, and twice been ordered to arbitrate the dispute. Plaintiff filed a legal action against defendant on March 21, 2005, alleging Business and Professions Code section 17200 violations, but it did not seek to amend its uniform submission agreement in arbitration until August 12, 2005. Moreover, plaintiff offered no excuse for failing to earlier assert its Business and Professions Code section 17200 claims which arose out of the same facts. Under these circumstances, the arbitrators could reasonably conclude there was no good cause to further delay the arbitration.

The parties have spent substantial time and energy debating whether the trial court *ordered* that the Business and Professions Code section 17200 claims be decided *in the pending arbitration*. As noted above, when it vacated the arbitration award, the trial court stated in part, "On August 15, 2005, this Court ordered [plaintiff's] claims under [section 17200] to arbitration in the then pending arbitration before the [National Association of Securities Dealers] . . . ." But even if the trial court did so order, the real question is whether it had the power and authority to require the arbitrators to expand the scope of the arbitration to include plaintiff's Business and Professions Code section 17200 claims. We find it did not. The trial court was authorized under Code of Civil Procedure section 1281.2 to order the parties to arbitrate the Business and Professions Code section 17200 claims raised in *SWAB III*. The trial court was also authorized under Code of Civil Procedure section 1281.4 to stay pending judicial actions. But beyond that, the trial court's power to interfere in the pending arbitration was strictly limited. (*Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 486–489 [35 Cal.Rptr.2d 4]; accord, *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 45–46 [12 Cal.Rptr.3d 711]; see *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 991–992 [64 Cal.Rptr.2d 843, 938 P.2d 903] (dis. opn. of Brown, J.).) The trial court had no authority to *order* the arbitrators to allow amendment of the claims in the pending arbitration.

 The Court of Appeal has explained the trial court's very limited authority with respect to a pending arbitration: "Code of Civil Procedure section 1281.4 requires a court to stay an action submitted to arbitration pursuant to an agreement of the parties. Beyond that, the court's role is fairly limited. Once a petition is granted and the lawsuit is stayed, 'the action at law sits in the twilight zone of abatement with the trial court retaining merely vestigial jurisdiction over matters submitted to arbitration.' (*Brock* v. *Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1796 [13 Cal.Rptr.2d 678].) During that time, under its 'vestigial' jurisdiction, a court may: appoint arbitrators if the method selected by the parties fails ([Code Civ. Proc.,] § 1281.6); grant a provisional remedy 'but only upon the ground that the award to which an applicant may be entitled may be rendered ineffectual without provisional relief' ([Code Civ. Proc.,] § 1281.8, subd. (b)); and confirm, correct or vacate the arbitration award ([Code Civ. Proc.,] § 1285). Absent an agreement to withdraw the controversy from arbitration, however, no other judicial act is authorized. (*Byerly* v. *Sale* (1988) 204 Cal.App.3d 1312, 1315 [251 Cal.Rptr. 749].) [¶] In the interim, the arbitrator takes over. It is the job of the arbitrator, not the court, to resolve all questions needed to determine the controversy. (*Van Tassel* v. *Superior Court* (1974) 12 Cal.3d 624, 627 [116 Cal.Rptr. 505, 526 P.2d 969], citing *Felner* v. *Meritplan Ins. Co.* (1970) 6 Cal.App.3d 540, 546 [86 Cal.Rptr. 178].) The arbitrator, and not the court, decides questions of procedure and discovery. (*East San Bernardino County Water Dist.* v. *City of San Bernardino* (1973) 33 Cal.App.3d 942, 950–951 [109 Cal.Rptr. 510]; *Brock* v. *Kaiser Foundation Hospitals, supra*, 10 Cal.App.4th at p. 1802; *McRae* v. *Superior Court* (1963) 221 Cal.App.2d 166, 171 [34 Cal.Rptr. 346].) It is also up to the arbitrator, and not the court, to grant relief for delay in bringing an arbitration to a resolution. (*Brock* v. *Kaiser Foundation Hospitals, supra*, 10 Cal.App.4th at p. 1808; *Byerly* v. *Sale, supra*, 204 Cal.App.3d at p. 1316; see also *Nanfito* v. *Superior Court* (1991) 2 Cal.App.4th 315, 318–319 [2 Cal.Rptr.2d 876].) As the court reasoned in *McRae* v. *Superior Court, supra*, 221 Cal.App.2d at page 171: 'When it has been determined that arbitration should be pursued and all judicial proceedings have been suspended until completion of the arbitration, it would be wholly incompatible with established policies of the law to permit the court thereafter to intervene in, and necessarily to interfere with, the arbitration ordered. In large measure, it would not only preclude the parties from obtaining "an adjustment of their differences by a tribunal of their choosing," but it would also recreate the very "delays incident to a civil action" that the arbitration agreement was designed to avoid.' [¶] . . . [¶] '[A]n arbitration has a life of its own outside the judicial system.' (*Byerly* v. *Sale, supra*, 204 Cal.App.3d at p. 1316.) The trial court may not step into a case submitted to arbitration and tell the arbitrator what to do and when to do it: it may not resolve procedural questions, order discovery, determine the status of claims before the arbitrator or set the case for trial because of a

party's alleged dilatory conduct. It is for the arbitrator, and not the court, to resolve such questions." (*Titan/Value Equities Group, Inc. v. Superior Court, supra,* 29 Cal.App.4th at pp. 487–489, fns. omitted; see *Dial 800 v. Fesbinder, supra,* 118 Cal.App.4th at pp. 45–46; *Engalla v. Permanente Medical Group, Inc., supra,* 15 Cal.4th at pp. 991–992 (dis. opn. of Brown, J.).)

Here, the parties elected to follow and be governed by the National Association of Securities Dealers Code of Arbitration Procedure. The parties agreed, "[A]rbitration shall be conducted in accordance with the rules then in effect of the National Association of Securities Dealers, Inc." That agreement was an "integral part" of their arbitration contract. (*Provencio v. WMA Securities, Inc.* (2005) 125 Cal.App.4th 1028, 1032 [23 Cal.Rptr.3d 524]; *Alan v. Superior Court* (2003) 111 Cal.App.4th 217, 224, 228 [3 Cal.Rptr.3d 377].) Rule 10328(c) states that once a panel of arbitrators has been appointed, a new or different pleading can be filed only with their consent. Rule 10328(c) states, "After a panel [of arbitrators] has been appointed, no new or different pleading may be filed except . . . with the panel's consent." Whether to allow plaintiff to amend its claims in the pending arbitration to include Business and Professions Code section 17200 allegations was for the arbitrators and not the trial court to decide. The trial court had no authority to order the arbitrators to do so.

 The trial court also had no discretion to vacate the arbitration award based on the arbitrators' disallowance of an amendment. Judicial review of arbitration awards is limited exclusively to the statutory grounds for vacating or correcting the award. (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at pp. 27–28; *Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810, 825 [5 Cal.Rptr.3d 442]; *Crowell v. Downey Community Hospital Foundation* (2002) 95 Cal.App.4th 730, 737 [115 Cal.Rptr.2d 810].) Pursuant to Code of Civil Procedure section 1286.2, the grounds for vacation of an arbitration award are: "(1) The award was procured by corruption, fraud or other undue means. [¶] (2) There was corruption in any of the arbitrators. [¶] (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [¶] (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. . . ." That the arbitrators refused to allow an amendment to

introduce new claims into a pending arbitration is not one of the statutory grounds for a trial court's vacation of an arbitration award.

Finally, plaintiff could have asserted its Business and Professions Code section 17200 claims against defendant in a separate arbitration by filing a submission agreement. Under rule 10314(a), an arbitration proceeding under the National Association of Securities Dealers Code of Arbitration Procedure is initiated by filing a submission agreement.[2] There is no apparent obstacle to plaintiff's submission of its Business and Professions Code section 17200 claims against defendant to arbitration.

## IV. DISPOSITION

The order vacating the arbitration award is reversed. Defendant, E*Trade Securities, LLC, is to recover its costs on appeal from plaintiff, SWAB Financial, LLC.

Armstrong, J., concurred.

**MOSK, J.,** Concurring.—I concur in the result, but write separately to discuss the standards of review to be employed by the trial court and by this court when a party seeks to vacate an arbitration award on the ground that the arbitrators refused to postpone a hearing.

The grounds for vacating an arbitration award are set forth in Code of Civil Procedure section 1286.2, subdivision (a)[1] (section 1286.2). (See *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d

---

[2] Rule 10314 provides in part: "Except as otherwise provided herein, an arbitration proceeding under this Code shall be instituted as follows: [¶] (a) Statement of Claim [¶] (1) The Claimant shall file with the Director of Arbitration an executed Submission Agreement, a Statement of Claim of the controversy in dispute, together with the documents in support of the Claim, and the required deposit."

[1] All further references to statutes are to the Code of Civil Procedure. Section 1286.2, subdivision (a) provides: "(a) Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following: [¶] (1) The award was procured by corruption, fraud or other undue means. [¶] (2) There was corruption in any of the arbitrators. [¶] (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefore or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [¶] (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this

899].)[2] If the trial court determines that any of those grounds exists, it "shall vacate the award." (§ 1286.2, subd. (a).)[3] SWAB Financial, LLC (SWAB), has invoked one of those grounds: "The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor . . . ." (§ 1286.2, subd. (a)(5).)

SWAB's grievance that the arbitrators did not allow it to amend its claim is not a ground for vacating an award unless the decision constituted prejudicial misconduct by the arbitrators (§ 1286.2, subd. (a)(3)) or a prejudicial "refusal of the arbitrators to hear evidence material to the controversy or . . . other conduct of the arbitrators contrary to the provisions of this title." (§ 1286.2, subd. (a)(5).) SWAB did not invoke any of these provisions in connection with its protest that the arbitrators refused to allow the amendment.

In considering the standard of review by a trial court of whether an arbitrator's remedy exceeded the arbitrator's powers in violation of section 1286.2, subdivision (a)(4), the Supreme Court said that "unless expressly restricted by the agreement of the parties [arbitrators] enjoy the authority to fashion relief they consider just and fair under the circumstances existing at the time of arbitration, so long as the remedy may be rationally derived from the contract and the breach." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 383 [36 Cal.Rptr.2d 581, 885 P.2d 994] (*Intel*).) Thus, the court provided that there should be "substantial deference to the arbitrators' own assessments of their contractual authority." (*Id.* at p. 373.) The other section 1286.2, subdivision (a) grounds for vacating an award are distinguishable from the ground of arbitrators exceeding their powers discussed in *Intel*, because the other grounds concern conduct and decisions by the arbitrators not directly involving consideration of the substance of the award.

The trial court's standard of review over whether "[t]he rights of a party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause" (§ 1286.2, subd. (a)(5)) has two components: sufficient cause and substantial prejudice. "Sufficient cause" to postpone the hearing is analogous to determinations by trial courts of "good cause," which

---

subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives."

[2] In *Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at page 32, the court said, "Absent a clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." Any such nonstatutory ground for vacating an award seemingly would involve a legal issue subject to de novo review.

[3] But see *Fininen v. Barlow* (2006) 142 Cal.App.4th 185 [47 Cal.Rptr.3d 687] (under unique circumstances, arbitrator's failure to disclose required information in violation of § 1286.2, subd. (a)(6) did not require vacation of award).

are generally matters of discretion. (See *Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 716 [15 Cal.Rptr.3d 609] ["the court must determine whether the party requesting the continuance has nonetheless established good cause therefore. That determination is within the court's discretion"]; see also *Stroud v. Superior Court* (2000) 23 Cal.4th 952, 956–957 [98 Cal.Rptr.2d 677, 4 P.3d 933]; *Laraway v. Sutro & Co.* (2002) 96 Cal.App.4th 266, 273 [116 Cal.Rptr.2d 823].) Yet, it is arguable that the standard of review by a trial court over an arbitrator's decision that there was not "sufficient cause" to postpone a hearing should not be an abuse of discretion standard because section 1286.2, subdivision (a)(5) mandates that the trial court vacate an award if the trial court "determines" that there was sufficient cause for postponing the hearing, as well as that the failure to postpone the hearing substantially prejudiced the party. Perhaps the admonition that courts should draw " 'every reasonable inference to support the award' " (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 541 [104 Cal.Rptr.2d 686]) and the language in *Intel, supra*, 9 Cal.4th at page 373 concerning "substantial deference" to the arbitrator's decision, suggest, in effect, a standard of review closer to abuse of discretion. In any event, the standard of review by a trial court of an arbitrator's conclusion that there is not sufficient cause for postponing a hearing seems unclear.[4]

The determination of whether an erroneous denial of a postponement by the arbitrator substantially prejudiced a party should, as other issues of prejudice, generally be treated as a legal issue. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801–802 [16 Cal.Rptr.3d 374, 94 P.3d 513] ["Accordingly, errors in civil trials require that we examine 'each individual case to determine whether prejudice actually occurred in light of the entire record' "]; *Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1111 [47 Cal.Rptr.2d 650] [prejudicial refusal to hear material evidence].) Arbitrators may consider prejudice in connection with whether there was sufficient cause to deny the postponement. But the arbitrators here decided there was not sufficient cause to grant a postponement—and not the discrete question of whether there was prejudice to the party erroneously denied the postponement—a question the trial court must determine de novo.

Because of the differences between the federal and California provisions governing vacating an arbitration award for the denial of a request for postponement of a hearing, federal authorities on the standard of review are not necessarily applicable. With respect to vacating an award for failure to grant a continuance, the provision in the United States Arbitration Act (FAA) (9 U.S.C. § 10(a)(3)) is different than the California arbitration provision

---

[4] In *Shammas v. National Telefilm Associates* (1970) 11 Cal.App.3d 1050, 1055–1056 [90 Cal.Rptr. 119], the court appeared to make its own determination that a postponement was not necessary; see also *Moore v. Griffith* (1942) 51 Cal.App.2d 386, 389 [124 P.2d 900].

covering postponements. The federal provision states that "the United States Court in and for the district wherein the award was made *may* make an order vacating the award . . . (3) [w]here the arbitrators were *guilty of misconduct in refusing to postpone the hearing*, upon sufficient cause shown . . . or of any other *misbehavior* by which the rights of any party have been prejudiced." (*Ibid.*, italics added.) Thus, under the FAA, in order for a trial court to vacate an award, the failure to grant a continuance must amount to misconduct or misbehavior. And the trial court is not required to vacate the award even if there is such "misconduct." The federal courts have stated that in order to vacate an award, the "misconduct" in refusing to postpone the hearing must amount to a denial of a fair hearing. (See *Laws v. Morgan Stanley Dean Witter* (5th Cir. 2006) 452 F.3d 398, 399–400.) The "substantial prejudice" requirement in section 1286.2, subdivision (a)(5) appears to be somewhat comparable to the federal "denial of a fair hearing" test.

An appellate court reviews a trial court's ruling vacating an award de novo, giving deference to the award. (See *Intel, supra,* 9 Cal.4th at p. 376, fn. 9; *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1056 [9 Cal.Rptr.3d 286].) If there are disputed issues of fact before the trial court—even if presented by declarations and affidavits—the appellate court accepts the trial court's resolution of those disputed facts if supported by substantial evidence. (See *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 55 [16 Cal.Rptr.3d 687]; *Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1359–1360 [131 Cal.Rptr.2d 524].) The appellate court also presumes the trial court found every fact and drew the permissible inferences to support the trial court's determination. (*Fininen v. Barlow, supra,* 142 Cal.App.4th at pp. 189–190; *Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923 [20 Cal.Rptr.2d 834].)

In the instant case, in view of the history of the matter, there is no basis to conclude under any standard of review that there was sufficient cause shown to postpone the hearing. Moreover, SWAB suffered no prejudice from the arbitrators' denial of the request for a postponement of the hearing. The basis of the request for a postponement was to allow SWAB to add a new statutory claim to the arbitration. SWAB was free to pursue that claim in another arbitration. If a ruling in the existing arbitration would adversely affect its new statutory claim, that same effect would have occurred if that statutory claim had been joined in the existing arbitration. SWAB's failure to attend the hearing following the denial of its request for a postponement was its own tactical decision, and did not constitute prejudice arising from the refusal of the arbitrators to postpone the hearing. Accordingly, SWAB did not establish

the substantial prejudice required to have the arbitration award vacated even assuming there was sufficient cause to postpone the hearing. I concur in the reversal of the order vacating the arbitration award.

Respondent's petition for review by the Supreme Court was denied August 29, 2007, S153867.