Filed 6/9/16  McElvany, Inc. v. Ahmadi CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MCELVANY, INC.,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>HASSAN AHMADI et al.,<br><br>　　　Defendants and Appellants. | F069809<br><br>(Super. Ct. No. CU151358)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Frank Dougherty, Judge.

Rad Law Group and Peyman H. Rad for Defendants and Appellants.

Morse, Morse & Morse and Brian D. Morse for Plaintiff and Respondent.

-ooOoo-

Defendants appeal from a judgment entered after confirmation of an arbitration award in plaintiff's favor.  Defendants contend the arbitration award should not have been confirmed because the arbitrator denied a further continuance of the arbitration hearing based on defense counsel's claimed unavailability and one defendant's incapacity due to recent surgery.  They also contend the award should not have been confirmed because the arbitrator failed to disqualify himself on their request, based on disclosures he made, which they assert gave the appearance of partiality.

We conclude defendants failed to demonstrate that their rights were substantially prejudiced by the arbitrator's denial of a postponement of the arbitration hearing upon sufficient cause being shown. We further conclude the arbitrator was not required to make the disclosures he made, and therefore defendants failed to establish he was obligated to disqualify himself upon defendants' subsequent request. Consequently, the trial court properly confirmed the arbitration award and entered judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff sued defendants for breach of contract and to foreclose a mechanic's lien against their real property. Defendant Hassan Ahmadi cross-complained against plaintiff for breach of contract. In July 2009, shortly before the scheduled trial date, the parties stipulated to submit the matter to binding arbitration before a single, neutral arbitrator. The court appointed C. Logan McKechnie as arbitrator; he scheduled the matter for arbitration on January 27, 2010. A few days before the scheduled hearing, defendants' attorney, Thomas Kidwell, advised plaintiff's counsel he would not appear for arbitration; he proposed a settlement and represented that, if it was not accepted, defendants would file for bankruptcy. Kidwell also faxed plaintiff's counsel a letter from attorney Peyman Rad, confirming Rad had been retained by Ahmadi to represent him in a bankruptcy proceeding. On January 27, 2010, plaintiff appeared for the arbitration; Ahmadi appeared, expressed surprise that Kidwell was not present, and requested a continuance, which the arbitrator granted.

Four days prior to the continued hearing date, Ahmadi filed a bankruptcy petition.[1] Because of the bankruptcy stay, the arbitrator closed his case. In August 2010, the bankruptcy court dismissed Ahmadi's case, and plaintiff petitioned the trial court for reappointment of McKechnie as arbitrator. The trial court granted the petition. McKechnie scheduled the arbitration hearing for September 27, 2010. Kidwell advised

---

[1] Defendant, Mahboobe Bidgoli, was not identified as a party in the bankruptcy case.

2.

that he no longer represented Ahmadi, Rad did. As a result, the arbitration was reset for a later date.

On November 16, 2010, plaintiff appeared for the scheduled arbitration. Defendants still had not filed a substitution of attorneys. Ahmadi appeared without an attorney; Bidgoli did not appear in person or by counsel. A few days prior to the hearing, both plaintiff's attorney and Ahmadi had learned that Kidwell had been suspended from the practice of law. Ahmadi requested another continuance, but the arbitrator denied the request and entered a default judgment in favor of plaintiff and against both defendants, based on the history of delays.

On January 4, 2011, Rad substituted into the action as counsel for Ahmadi.[2] He filed a motion to set aside both the arbitrator's award and the order submitting the matter to arbitration. In his supporting declaration, Ahmadi professed ignorance of entry of the arbitration award and denied he had agreed to submit the matter to binding arbitration. Plaintiff filed a petition to confirm the arbitration award. The trial court set aside the arbitration award, but not the order for binding arbitration. In announcing its decision orally, the trial court opined that McKechnie had "become too embroiled in these issues" and a new arbitrator should be appointed. It appointed Weldon Mattos, Jr.

On November 30, 2011, Mattos disclosed to the parties that his law firm had hired a new associate, Ann Hanson, who had previously worked for the law office of plaintiff's attorney, Morse, Morse & Morse. Rad requested that Mattos recuse himself, suggesting plaintiff's attorney had engaged in misconduct. Mattos declined.

On October 31, 2013, Mattos disclosed that the sister of his long-time paralegal had started employment as a receptionist with the Morse firm. He stated this would not influence his ability to act as a fair and impartial arbitrator.

---

[2]     No substitution of attorneys for Bidgoli, changing her attorney from Kidwell to Rad, was filed until August 29, 2011.

Mattos scheduled and rescheduled the arbitration hearing. Ultimately, he set it for January 29 through 31, 2014. Rad represented he would be unavailable that week and substituted out as defense counsel. On January 27, 2014, attorney Kaveh Mirshafiei substituted in as attorney for defendants. He immediately filed an ex parte application to continue the arbitration hearing, based on his recent substitution into the case and on Bidgoli's recent surgery, which made travel difficult; the application also sought to disqualify Mattos as the arbitrator, based on his disclosures and his refusal to continue the hearing date again. The trial court denied both the continuance and disqualification.

The matter proceeded to arbitration. Plaintiff appeared with counsel and produced evidence in support of its claims. Neither defendants nor their attorney appeared. The arbitrator awarded plaintiff $90,833.62, plus prejudgment interest, costs and attorney fees against both defendants. He found plaintiff had a valid and enforceable lien against defendants' real property and ordered that the property be sold. Further, he found in favor of plaintiff on Ahmadi's cross-complaint.

Plaintiff filed a petition to confirm the arbitration award, which defendants opposed on the grounds the arbitrator unfairly denied a continuance and should have disqualified himself. The trial court granted the petition, confirmed the arbitration award, and entered judgment in accordance with the arbitration award. Defendants appeal.

### *DISCUSSION*

## I.      Vacating an Arbitration Award

"[A]n award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in [Code of Civil Procedure] sections 1286.2 (to vacate) and 1286.6 (for correction)."[3] (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 33.) Section 1286.2 lists the exclusive grounds for

---

[3]      All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

vacating an arbitration award. (*Trabuco Highlands Community Assn. v. Head* (2002) 96 Cal.App.4th 1183, 1188.)  The trial court must vacate the award if it determines that "[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor" (§ 1286.2, subd. (a)(5)) or that "[a]n arbitrator making the award … was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision" (§ 1286.2, subd. (a)(6)).  Defendants contend the trial court erred in failing to vacate the arbitration award on either or both of these grounds.

On appeal from a judgment based on an order confirming an arbitration award, "we review the trial court's order (not the arbitration award) under a de novo standard. [Citations.]  To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues." (*Lindenstadt v. Staff Builders, Inc*. (1997) 55 Cal.App.4th 882, 892, fn. 7.)  The party claiming error in confirmation of the arbitration award bears the burden of establishing that claim.  (*Ikerd v. Warren T. Merrill & Sons* (1992) 9 Cal.App.4th 1833, 1841.)

## II.     Failure to Grant a Continuance

Defendants argue under section 1286.2, subdivision (a)(5), that their rights were substantially prejudiced by the arbitrator's refusal to postpone the arbitration.  They assert they presented good cause for a continuance, because Bidgoli was unable to travel to attend the hearing, their attorney was unavailable on the date set for the hearing, and the new counsel they retained just prior to the hearing required time to prepare for the hearing.[4]

---

[4]     In support of their position, defendants cite California Rules of Court, rule 3.818(b), which authorizes the trial court to grant a continuance on motion of a party, if the arbitrator declines to do so.  Rule 3.818 governs judicial arbitrations; the arbitration in issue was a contractual arbitration.  Defendants also cite title 9 of the California Standards of Judicial Administration, as authority for granting a continuance based on the illness of a party, the

5.

The procedures for contractual arbitration are set out in sections 1280 to 1294.2. Section 1282.2 provides: "The neutral arbitrator shall appoint a time and place for the hearing and cause notice thereof to be served personally or by registered or certified mail on the parties to the arbitration … not less than seven days before the hearing." (§ 1282.2, subd. (a)(1).) "On request of a party to the arbitration for good cause, or upon his own determination, the neutral arbitrator may postpone the hearing." (§ 1282.2, subd. (b).) "The word 'may' is permissive rather than mandatory." (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1197 (*SWAB*).) The ethical standards applicable to arbitrators require them to "conduct the arbitration fairly, *promptly*, and diligently." (Cal. Rules of Court, Ethics Stds. For Neutral Arbitrators in Contractual Arbitration, std. 13(a), italics added (Ethics Stds.).) Thus, postponement of the hearing was within the arbitrator's discretion, on a showing of good cause.

"[T]he decision whether to grant a continuance lies in the first instance with the arbitrator." (*SWAB, supra,* 150 Cal.App.4th at p. 1196.) When an arbitrator exercises discretion by denying a continuance request, two issues must be resolved by the trial court in determining whether to vacate the arbitration award. (*Id.* at p. 1198.) "First, the trial court must determine whether the arbitrator abused his or her discretion by refusing to postpone the hearing upon sufficient cause being shown. Second, if there was an abuse of discretion, the trial court must determine whether the moving party suffered substantial prejudice as a result. Moreover, on appeal from the trial court's order granting or denying a request to vacate the arbitration award, our review is de novo. In other words, in this case, we must consider whether the *arbitrators* abused their discretion and there was substantial prejudice in denying plaintiff's continuance motion." (*Ibid.*)

---

unavailability of a trial attorney, or substitution of an attorney. That standard has not existed since 2006.

6.

The record indicates Mattos scheduled the arbitration hearing for October 2013. He later postponed it to November 2013, based on Rad's representation he had discovered he had a calendar conflict; the order resetting the hearing required counsel to avoid any conflicting commitments. Mattos subsequently postponed the hearing again. He extended to defense counsel the opportunity to designate dates on which he and his clients would be available. Mattos and Rad discussed the scheduling of the arbitration on December 23, 2013. In an e-mail of that date, Mattos confirmed an agreement that Rad was to respond by January 6, 2014, with dates in late January and early February for the arbitration. Thus, Rad, and presumably his clients, knew in December that Mattos planned on scheduling the arbitration for the end of January or beginning of February.

Rad declared he called Mattos on January 6, 2014, "to discuss availability and the possibility of substituting out of the case, but was unable to speak with him." Rad's declaration did not state that he left dates of availability or unavailability with his message, nor did it explain why he did not do so, in light of the agreed upon deadline. The next day, January 7, 2014, the arbitrator issued his order No. 11, also signed by a judge, ordering that the arbitration take place on January 29 through 31, 2014.

On January 10, 2014, Rad sent Mattos a letter complaining that Mattos had set the arbitration date without Rad's input, and stating January 29 was Rad's birthday and he would be unavailable that week. Rad asserted the "selection of [an] arbitrary date without consultation" had made it "impossible to attend to this case"; he enclosed substitutions of attorney, which removed Rad as counsel for defendants and left Ahmadi and Bidgoli representing themselves 19 days before the scheduled arbitration.

On January 16, 2014, defendants sent a letter to Mattos asking for a continuance, based on Bidgoli's "double complete knee replacement surgery in the month of December 2013" and on their need to find replacement counsel. Defendants apparently also provided Mattos with a note from Bidgoli's doctor, which stated that she was recovering from surgery and "should limit long distance driving for the next 1-2 months,

7.

and may return to driving as tolerated." Mattos responded to defendants' letter by e-mail, stating "I am going to change the Arbitration date based on your letter." Two hours later, after plaintiff's attorney objected, Mattos corrected his e-mail, stating he was *not* changing the arbitration, and his prior e-mail was in error; he apologized for omitting the word "not" in his first e-mail.

On January 27, 2014, two days before the arbitration was scheduled to begin, Mirshafiei substituted in as counsel for Ahmadi and Bidgoli, and brought an ex parte application in the trial court for a 60- to 90-day continuance of the arbitration. The request was based on Mirshafiei's need to prepare for arbitration and on Bidgoli's incapacitation after knee surgery. The trial court denied the application.

After the arbitrator made his award in favor of plaintiff, defendants opposed plaintiff's petition to confirm the arbitration award, contending the arbitrator should have disqualified himself and he unfairly refused to continue the hearing. The trial court confirmed the arbitration award, finding in part that, "based on the procedural history of this case involving substantial delays and previous continuances amounting to several years' time, … the Arbitrator did not abuse his discretion in reasonably concluding that there was no good cause to further delay the arbitration."

### A. *Bidgoli's incapacity*

Defendants assert they were prejudiced by the denial of a continuance that would have allowed defendant Bidgoli to be present at the arbitration hearing. They claim "[i]t is always prejudicial to deny a party's presence at a dispositive hearing on the merits of an action." In support of this statement, they cite *Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881 (*Hoso*) and *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 (*Graham*). Neither case supports such a broad rule.

In *Hoso*, a dispute arose between the parties about the provisions of a lease contract between them. (*Hoso*, *supra*, 190 Cal.App.4th at p. 885.) The parties agreed to binding arbitration. (*Ibid.*) The arbitrator permitted only one representative of the

8.

defendant, the Columbus Club, to be present during the arbitration: Rodela, who was a codefendant with an agreement that he would be dismissed if the matter were arbitrated. (*Id*. at p. 886.) The arbitrator ruled in favor of Hoso, and the trial court confirmed the award. (*Id*. at p. 886.)

The appellate court reversed, concluding the arbitrator exceeded his authority by restricting the Columbus Club to being represented only by Rodela, which denied the Columbus Club a fair hearing. (*Hoso*, *supra*, 190 Cal.App.4th at p. 889.) Neither the Code of Civil Procedure nor the rules of the American Arbitration Association (AAA), under which the arbitration was conducted, permitted the arbitrator to preclude a corporate party from designating a representative to attend the arbitration proceedings. (*Hoso,* at p. 889.) In fact, the AAA rules provided that any person having a direct interest in the arbitration was entitled to attend hearings. (*Hoso,* at p. 889.) The arbitrator exceeded his authority under the AAA rules by limiting the Columbus Club's representation in the arbitration proceedings. (*Hoso,* at p. 890.) The Columbus Club was prejudiced by the limitation. Hoso's representative testified to what the Columbus Club's representatives had said during contract negotiations; Rodela had not been present during those negotiations and could not contradict that testimony or assist counsel in cross-examining the witness. (*Id*. at pp. 891–892.) The court concluded "that the arbitrator's exclusion of any representative beyond Rodela precluded appellant from receiving a fair hearing. [Citation.] Rodela had neither the knowledge nor the incentive to effectively represent appellant's interests at the arbitration. Under these circumstances, we may presume that appellant suffered prejudice from the absence of an independent representative." (*Id*. at p. 892.)

*Graham* did not involve a party's absence from the arbitration proceedings. It involved a standard form contract between musicians and a concert promoter, which required arbitration of disputes before the American Federation of Musicians. (*Graham*, *supra*, 28 Cal.3d at p. 813.) The court concluded the arbitration agreement could not be

9.

enforced because it did not provide for minimum levels of integrity that would ensure each party a fair opportunity to present the party's side of the dispute; the agreement designated as arbitrator the musician's union, which was presumptively biased in favor of its members. (*Id*. at pp. 821, 826–828.) On that basis, the court reversed the judgment that was entered after confirmation of the arbitration award. (*Id*. at p. 831.)

*Hoso* dealt with an arbitrator who prevented a corporate party from designating which representative or representatives of the corporation would be present during the arbitration. The court concluded the rules governing the arbitration did not permit the arbitrator to limit the corporation to a single representative chosen by the arbitrator. *Graham* determined that an arbitration proceeding must provide each party with a fair opportunity to present its case, and having an arguably biased arbitrator did not comply with that requirement.

The arbitrator here did not preclude any party from attending the arbitration hearing. Unlike the arbitrator in *Hoso*, he did not bar Bidgoli, or any other party, from attending that arbitration.

Mattos scheduled, then postponed, the arbitration in October and November 2013. Defendants presumably were aware of the pending arbitration and knew the hearing would be rescheduled shortly. Mattos advised Rad in December 2013 that he intended to set the arbitration for late January or early February 2014. Rad agreed to notify Mattos of dates of availability during that period by January 6, 2014, "regardless whether [Rad] remain[ed] as counsel or Mr. Ahmadi [was] in pro per." Nothing in the record indicates Rad notified Mattos, either in December 2013 or prior to January 6, 2014, that Bidgoli wished to attend the arbitration, but was undergoing surgery and would be unable to travel to the arbitration in late January or early February 2014. Nothing in the record indicates why Bidgoli scheduled surgery in December 2013, or whether she took the pending arbitration proceeding into account in scheduling it then. Bidgoli had not appeared for prior scheduled arbitrations, even when Ahmadi had appeared. Many of the

documents filed by defense counsel in this case were filed on behalf of Ahmadi only, including the petition to set aside the first arbitration award and the opposition to plaintiff's petition to confirm that award.

The record contains no declaration from Bidgoli expressing a desire to attend the arbitration. Defendants presented no evidence to the arbitrator or the trial court showing what Bidgoli would contribute to the arbitration proceedings. They did not show she was involved in any of the events that led to the litigation; they did not show she possessed critical knowledge that required her testimony or that would have assisted counsel in presenting defendants' case or opposing plaintiff's. The record indicates Bidgoli had little or no involvement in the arbitration proceedings in the years leading up to the January 2014 arbitration hearing. Thus, when defendants requested a continuance of the January 2014 arbitration date, there was nothing before the arbitrator or the trial court demonstrating that Bidgoli desired to be present at the arbitration or that her presence was necessary to a fair presentation of defendants' case.

Under these circumstances, and given the lengthy delays that had occurred prior to scheduling the January 2014 arbitration hearing, we conclude the arbitrator did not abuse his discretion by denying defendants' last minute request for another continuance of the arbitration hearing. We agree with the trial court's conclusion, "based on the procedural history of this case, involving substantial delays and previous continuances amounting to several years' time, that the arbitrator did not abuse his discretion in reasonably concluding that there was no good cause to further delay the arbitration hearing."

Further, defendants failed to demonstrate that their rights were substantially prejudiced by the arbitrator's denial of a postponement of the arbitration hearing (§ 1286.2, subd. (a)(5)). They failed to show they could not adequately present their case without Bidgoli's presence at the arbitration hearing.

11.

The trial court did not err in confirming the arbitration award and denying defendants' motion to vacate the award based on the arbitrator's denial of the request for a continuance because of Bidgoli's incapacity.

### B.      *Substitution of attorneys*

Defendants also contend the arbitration award should have been vacated because the arbitrator refused to grant a postponement despite their last minute substitution of attorney Mirshafiei into the case. To determine whether the arbitrator properly denied a postponement of the hearing, we must determine whether the arbitrator abused his discretion by refusing to postpone the hearing when sufficient cause was shown, and whether defendants suffered substantial prejudice as a result. (*SWAB, supra,* 150 Cal.App.4th at p. 1198.)

Mattos advised Rad in December 2013 that he intended to set the arbitration for late January or early February 2014. Rad knew he had only until January 6, 2014, to notify Mattos of the dates he and his clients would be available during that period. The previous order setting the arbitration date had included an order that "[a]ll counsel SHALL avoid any conflicting commitments." In light of these facts, Rad and defendants knew or should have known of the importance of advising the arbitrator of their pre-existing commitments and avoiding new commitments during the time period in which Mattos intended to schedule the arbitration hearing. Rad waited until the last day, January 6, 2014, to contact Mattos to discuss his dates of availability. Rad was unable to reach Mattos. Despite the importance of the information and the deadline for providing it, Rad did not leave a timely message providing his and his clients' availability information to Mattos. The record does not indicate Rad tried to contact Mattos again the same day or the next day.

On January 7, 2014, not having received any availability information from Rad, Mattos scheduled the arbitration hearing for the end of January, as previously contemplated, and faxed the order to counsel. In response, Rad accused Mattos of setting

12.

an "arbitrary date without consultation" and asserted he had a calendar conflict (without providing any details, other than stating the first day set for arbitration was his birthday). Defendants then substituted Rad out as their attorney, even though the arbitration date was less than three weeks away, leaving themselves unrepresented. The record contains no declaration from defendants explaining why they agreed to allow Rad to substitute out, when the arbitration hearing was imminent. Defendants used the substitution and their need to find replacement counsel as the basis for requesting a further continuance from the arbitrator, which was denied. Defendants retained new counsel just a few days before the arbitration hearing. They again asked the trial court for another postponement of the arbitration hearing, based on their new attorney's lack of preparation. When their request for a continuance was denied by the trial court, defendants and their new attorney chose not to appear at the January 30, 2014, arbitration hearing.

We conclude the arbitrator did not abuse his discretion in denying a further postponement. The parties agreed in July 2009 to arbitrate their dispute. Prior to January 2014, the matter had been set for arbitration at least eight times.[5] On January 27, 2010, Ahmadi appeared at the arbitration hearing; Bidgoli and defendants' attorney, Kidwell, did not appear. Prior to that hearing, Kidwell had indicated to opposing counsel he would not appear for the arbitration, as defendants anticipated settling the matter or filing for bankruptcy. Neither occurred. Ahmadi expressed surprise at his attorney's absence and requested a postponement. The matter was reset; shortly before the next hearing date, Ahmadi filed for bankruptcy. After the bankruptcy case was dismissed because Ahmadi failed to comply with the bankruptcy court's order, the arbitration was reset for September 27, 2010. Prior to that date, Kidwell advised opposing counsel and the arbitrator that he no longer represented defendants, and requested a continuance until Rad could substitute in as their counsel. The matter was rescheduled for October 20, 2010.

---

[5] In addition to the eight times discussed here, the matter may have been set for hearing on November 29, 2009.

13.

The matter was again reset for November 16, 2010. On that date, Ahmadi appeared, without an attorney; Bidgoli did not appear. No substitution of attorneys had yet been filed. Ahmadi requested another continuance. The arbitrator denied the request, based on the history of the case and defendants' conduct, and entered a default award against defendants.

On motion of Ahmadi, then represented by Rad, the default award was vacated on the ground defendants were prejudiced by the denial of a continuance because they were essentially unrepresented; Ahmadi had advised the arbitrator that he learned just prior to the November 16, 2010, arbitration date that attorney Kidwell was the subject of disbarment proceedings.

The matter was reassigned to Mattos as arbitrator. He scheduled the hearing for May 29, 2012. On that date, Ahmadi filed his second bankruptcy petition.[6] After consulting the attorneys, Mattos next set the matter for hearing on October 24, 2013. Despite approving the date, Rad later advised he had discovered a calendaring error and needed a continuance. The matter was reset for November 18, 2013, then January 29, 2014.

In light of the whole history of the matter, the arbitrator could have concluded defendants and their attorneys were manipulating events and unnecessarily delaying the arbitration. The undisputed evidence indicated that, through bankruptcy filings and dismissals, continuances, delays in replacing their first attorney, and other actions, defendants and their attorneys managed to delay the arbitration for more than four and one-half years. Substantial evidence supported an inference they then manufactured a scheduling conflict for their attorney, used it as an excuse to substitute in new counsel,

---

[6] The record contains references to a third bankruptcy proceeding, but does not indicate when or under what circumstances that proceeding was commenced.

and requested another delay. The arbitrator and the trial court were justified in concluding good cause for a further postponement did not exist.

Defendants have also failed to establish any prejudice to them. "An error is prejudicial and results in a miscarriage of justice only if the reviewing court concludes, based on its review of the entire record, that it is reasonably probable that the trial court would have reached a result more favorable to the appellant absent the error." (*Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 999.) The burden is on defendants, as the appellants, to establish prejudice; they must tender a proper prejudice argument, spelling out in their brief exactly how the alleged error caused a miscarriage of justice. (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.) Defendants argue here, as they did in the trial court, that the denial of a continuance prevented them from presenting their case. They have not pointed to any evidence in the record or offered any argument demonstrating a probability the outcome of the arbitration would have been different if they had presented their case on the merits. They have not asserted or shown that they had a potentially viable defense to plaintiff's claims.

Accordingly, we find the arbitrator did not abuse his discretion in denying a further postponement of the arbitration proceeding. The trial court was justified in confirming the arbitration; defendants did not demonstrate their rights "were substantially prejudiced by the refusal of the arbitrator[] to postpone the hearing upon sufficient cause being shown therefor." (§ 1286.2, subd. (a)(5))

## III.    Disqualification of Arbitrator

Initially, we reject plaintiff's argument that the disqualification order was appealable at the time it was made, and no timely appeal from it was filed, so we cannot review that order in this appeal. Its argument is based on cases discussing disqualification of attorneys, not arbitrators. Section 1286.2, subdivision (a)(6), requires the trial court to vacate the arbitration award if the arbitrator was subject to disqualification, but failed to disqualify himself. Defendants are appealing from the

15.

judgment entered after the trial court confirmed, rather than vacated, the arbitration award. Section 1294 identifies the arbitration orders that may be appealed. They do not include an order denying disqualification of an arbitrator. (§ 1294; see *Steelform Contracting Co. v. Baldwin Contracting Co.* (1962) 209 Cal.App.2d 177, 178 [concluding an order denying a petition to annul the designation of an arbitrator was not appealable].) They do include a judgment entered on an arbitration award. (§ 1294, subd. (d).) Accordingly, we review on the merits defendants' contention the arbitration award should have been vacated based on the arbitrator's failure to disqualify himself.

Section 1281.9 requires a neutral arbitrator to disclose to the parties "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." (§ 1281.9, subd. (a).) This includes disclosure of any ground set out in section 170.1 for disqualification of a judge and any matter required to be disclosed pursuant to the ethics standards applicable to neutral arbitrators. (§ 1281.9, subd. (a)(1), (2).) Section 170.1 requires a judge to disqualify himself or herself if "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." (§ 170.1, subd. (a)(6)(A)(iii).) "If any ground specified in Section 170.1 exists, a neutral arbitrator shall disqualify himself or herself upon the demand of any party made before the conclusion of the arbitration proceeding." (§ 1281.91, subd. (d).) Likewise, the ethics rules applicable to neutral arbitrators require the arbitrator to "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial," and to disqualify himself or herself if the arbitrator fails to make the disclosure or makes the disclosure and receives a notice of disqualification from one of the parties. (Ethics Stds., std. 7(d), std. 10(a)(2).)

Section 1281.91 "confers on both parties the unqualified right to remove a proposed arbitrator based on any disclosure required by law which could affect his or her neutrality.… As long as the objection is based on a required disclosure, a party's right to

16.

remove the proposed neutral by giving timely notice is absolute." (*Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1163.) Disqualification of an arbitrator based on a disclosure is an absolute right only when the disclosure is legally required, however. (*Luce, Forward, Hamilton & Scripps, LLP v. Koch* (2008) 162 Cal.App.4th 720, 735.) When an arbitrator, out of an abundance of caution, discloses information he is not legally required to disclose, disqualification is not mandated even if a party makes a timely request. (*Id*. at pp. 724–725.) When the facts are not in dispute and the question involves disclosure of "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial" (§ 1281.9, subd. (a)), the appellate court must determine de novo whether disclosure of the facts was legally required. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 386, 388 (*Haworth*).)

"The test for partiality is an objective one. [Citations.] Actual bias is not required." (*Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 960.) "'Impartiality' entails the 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind.'" (*Haworth*, *supra*, 50 Cal.4th at p. 389.) "[T]he appearance-of-partiality 'standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice."' [Citations.] 'The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer."' [Citations.] '[T]he partisan litigant emotionally involved in the controversy underlying the lawsuit is not the *disinterested objective observer* whose doubts concerning the judge's impartiality provide the governing standard.' [Citations.] [¶] 'An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason*.'" (*Ibid*.)

17.

Thus, the decision on disqualification is not based on the arbitrator's personal belief about his or her impartiality, nor is it based on the challenging party's necessarily partisan views. (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 104.) Rather, the test is whether a reasonable person could believe the arbitrator was biased for or against a party for a particular reason. (*Haworth*, *supra*, 50 Cal.4th at p. 389.)

On November 30, 2011, Mattos disclosed to the parties that his firm had hired an associate, Ann Hanson, who had formerly worked for the Morse firm. He stated Hanson believed she had had no contact with this case while she worked for the Morse firm, and she had no knowledge of the facts, circumstances, or information involved. Mattos opined there was no actual conflict and asserted his ability to act as a neutral arbitrator was not affected by her hiring. Rad requested that Mattos disqualify himself as arbitrator due to "at least an appearance of conflict." He complained of Morse's conduct, including obtaining a default arbitration award when defendants' attorney was being disbarred, and suggested no confidence could be placed in Morse's assurances about Hanson. Mattos declined to recuse himself, asserting Hanson would not be involved in the arbitration and would be isolated from any discussion of the case or activity in the file.

Almost two years later, on October 31, 2013, Mattos disclosed to the parties that the sister of his long-time paralegal had started employment with Morse's firm as a receptionist. He stated the situation would not influence his ability to be a fair and impartial arbitrator.

Defendants contend the arbitration award should have been vacated because Mattos should have disqualified himself as arbitrator, based on the "back and forth exchange of staff and Mr. Mattos' exhibited bias." As to the hiring of Hanson by Mattos's firm, defendants' argument is confused. They assert their request that Mattos recuse himself was based on their lack of confidence in *Morse's* representations regarding insulation of Hanson from this case. The record does not reflect that any such

representations were made. Mattos advised defendants of Hanson's hiring by his firm and advised that *Hanson* stated she had not been involved in the case and had no knowledge of it. *Mattos* then assured Rad that Hanson would not be involved in the case and would be isolated from any discussion of it or activity on the file. Hanson was hired by Mattos's firm, not by Morse's, so Morse made no assertion that she would be isolated from the case.

Defendants provide no citation of legal authority or reasoned argument demonstrating that disqualification of an arbitrator is required whenever the arbitrator's firm hires an attorney who formerly worked for the office of a party's attorney, even when the hired attorney had no involvement in the case while working for the party's attorney and would be isolated from the case in the arbitrator's office. We do not believe this is the type of information that would cause a reasonable person to believe the arbitrator was biased for plaintiff or against defendants, or that he would be unable to remain impartial.

Defendants have also made no showing that disqualification is required based on the Morse firm's hiring of the sister of Mattos's paralegal as a receptionist. Defendants have provided no citation of legal authority or reasoned argument that this hiring caused any kind of conflict of interest, or even the appearance of a conflict, that would require the arbitrator to disqualify himself. The sister was hired as a receptionist, not an attorney or a paralegal. Presumably, she would have no substantive involvement in the handling of the case at Morse's firm. She was not previously employed by Mattos's firm. There was no evidence she had any prior contact with the case or information about it; there was no evidence she ever discussed the case with Mattos's paralegal. Mattos's disclosure letter to the parties advised that he had instructed his paralegal not to discuss the case outside the office or with nonemployees, which would include the sister hired by Morse's firm. Nothing in the record supports even an appearance of partiality or bias based on the hiring by plaintiff's attorney of a relative of an employee of Mattos's firm.

19.

Defendants argue that, in addition to these two disclosed matters, Mattos's conduct demonstrated a lack of impartiality. In support they cite his "unilaterally" setting an arbitration date without consulting Rad and denying a continuance based on Rad's and Bidgoli's unavailability. In the circumstances of this case, neither setting a hearing date after counsel failed to take advantage of the opportunity to designate dates that he and his clients would be available for the hearing, nor ruling against defendants on a request for a continuance based on counsel's unavailability on the date chosen in the absence of counsel's designation of dates, demonstrates the arbitrator had any bias against defendants.

Defendants have not shown that Mattos's disclosures or his conduct, individually or collectively, demonstrated bias or "could cause a person aware of the facts to reasonably entertain a doubt that [Mattos] would be able to be impartial." (§ 1281.9, subd. (a).) Mattos was not required to disqualify himself. The trial court did not err in confirming the arbitration award.

## *DISPOSITION*

The judgment is affirmed. Plaintiff is entitled to its costs on appeal.

_____
HILL, P.J.

WE CONCUR:


_____
FRANSON, J.


_____
PEÑA, J.

20.