Filed 9/6/22  Shustak Reynolds & Partners, P.C. v. Weisbord CA4/1
(unmodified opinion attached)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SHUSTAK REYNOLDS & PARTNERS, P.C., | D079169 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2019-00066060-CU-BC-CTL) |
| JOSHUA WEISBORD et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Appellants. | |

It is ordered that the opinion filed herein on August 17, 2022, be modified as follows:

On page 23, the first sentence of the third full paragraph is stricken and a citation is added to the last sentence of this paragraph.  The paragraph now reads as follows:

> "The Weisbords argue Shustak's agreement to toll the statute of limitations, as part of the parties' stipulation allowing Joshua to withdraw his "non-compulsory" claims, violated California's "one final judgment" rule, inasmuch as the judgment entered in this case disposed of less than all of the claims between them. We find this argument unavailing.  (See *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097 (*Kurwa*))."

There is no change in the judgment.

The declaration of Michael Nalu in support of the petition for rehearing of appellants Joshua Weisbord and Barry Weisbord is stricken.

Appellants' petition for rehearing is denied.

_____

HALLER, Acting P. J.


Copies to:  All parties

2

Filed 8/17/22  Shustak Reynolds & Partners v. Weisbord CA4/1 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SHUSTAK REYNOLDS & PARTNERS, P.C., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JOSHUA WEISBORD et al., <br><br> Defendants and Appellants. | D079169 <br><br><br> (Super. Ct. No. 37-2019-00066060-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

The Nalu Law Firm, Michael Nalu; Williams Iagmin and Jon R. Williams for Defendants and Appellants.

Shustak Reynolds & Partners and Paul A. Reynolds for Plaintiff and Respondent.

Defendants Joshua Weisbord (Joshua) and his father Barry Weisbord (Barry) (collectively, the Weisbords) appeal the trial court order and resulting judgment affirming an arbitration award of $322,152.43 (Arbitration Award) for plaintiff Shustak Reynolds & Partners, P.C. (Shustak or Law Firm), the former attorneys of Joshua in a third-party action.  The Weisbords contend

the trial court erred in refusing to vacate the Arbitration Award on the grounds the arbitrator abused her discretion in declining to (1) continue the arbitration hearing (Code Civ. Proc., § 1286.2, subd. (a)(5))[1] and (2) hear material evidence (*ibid.*).

As we explain, we conclude the trial court did not err in denying the Weisbords' motion to vacate the Arbitration Award. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Overview*

In January 2017, Joshua filed an action against his former employer titled *Weisbord v. Turtle Beach Corporation, et al.* (San Diego County Superior Court case No. 37-2017-0014483-CU-WT-CTL (Wrongful Termination Lawsuit)). Attorney Howard Rosen filed the Wrongful Termination Lawsuit and represented Joshua until early 2019. Shortly thereafter, Joshua retained Shustak to represent him in the Wrongful Termination Lawsuit and on April 3, 2019 entered into a written fee agreement with the Law Firm (Fee Agreement).

Shustak represented Joshua for about seven months. Joshua fell behind in payments to Shustak, which led to a fee dispute and ultimately, to the Law Firm substituting out of the Wrongful Termination Lawsuit in November 2019 for nonpayment of fees. In December 2019 Shustak filed the instant action in San Diego County Superior Court to recover its fees.

In March 2020, Shustak submitted an arbitration demand to JAMS, after Joshua filed a cross-complaint against the Law Firm. On August 12, 2020, the parties stipulated to arbitrate their "entire" fee dispute on

---

1     Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

2

November 16 through 20, 2020.  Two days later, the trial court signed the stipulation and ordered the parties into arbitration, but agreed to retain jurisdiction to adjudicate any post-arbitration matters.  The arbitration of the fee dispute took place as scheduled in November 2020, which led to the Arbitration Award against the Weisbords.  This appeal followed after the trial court affirmed the Award in March 2021.

### B.  *Fee Agreement*

Under the Fee Agreement, Joshua agreed to pay Shustak its usual and customary rates for legal work it performed in the Wrongful Termination Lawsuit; to pay 12 percent interest on any aged, unpaid invoices; and to reimburse Shustak for all costs and disbursements it advanced on his behalf.  The Fee Agreement also provided that Barry would pay " 'all or a portion of the legal fees, costs and disbursements incurred in connection with' " the Wrongful Termination Lawsuit.  Joshua paid Shustak a $50,000 retainer.

The Fee Agreement also included a dispute resolution section.  It provided in part that, if a fee dispute arose between Joshua and Shustak, Joshua had the right to have the dispute submitted to final and binding arbitration through the San Diego County Bar Association; and that if Shustak had a fee dispute with Joshua, it would request he voluntarily submit to final and binding arbitration, but if he refused, Shustak could file an action in either the San Diego County Superior Court or the United States District Court for the Southern District of California.  The Fee Agreement further provided the parties agreed to submit to "final and binding

3

arbitration" any dispute in which Joshua alleged Shustak "acted negligently."[2]

On October 2, 2019, about six months after Joshua entered into the Fee Agreement, Barry signed a personal guarantee agreeing to be responsible for all of Shustak's invoices in the Wrongful Termination Lawsuit. Shustak sought the guarantee after Joshua "fell behind" on payments to the Law Firm. Thereafter however, neither Joshua nor Barry made any additional payments to Shustak.

## C. *Superior Court Action (Fee Dispute)*

Due to nonpayment of fees, Shustak substituted out of the Wrongful Termination Lawsuit on or about November 22, 2019. Prior to its motion to withdraw, Shustak sent Joshua a notice of his right to binding fee arbitration with the San Diego County Bar Association, after Joshua failed to file an application for arbitration.

Shustak filed the instant action against the Weisbords on December 12, alleging causes of action for breach of contract, breach of personal guarantee, quantum meruit, and account stated. Shustak asserted that the Weisbords then owed the Law Firm in excess of about $288,000. On February 24, 2020 the Weisbords answered the complaint and Joshua filed a cross-complaint for breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty.

In response to the cross-complaint, Shustak on March 2 filed a motion to compel arbitration and stay the superior court action. In support, Shustak

---

[2]     The Fee Agreement also stated in boldface, capital letters (omitted here): "By signing this Agreement, we jointly agree to have any issue of legal malpractice decided by a single, neutral arbitrator and we jointly are waiving our right to a jury or court trial."

argued Joshua's cross-complaint triggered the mandatory arbitration provision in the Fee Agreement because Joshua complained about the "professional services" rendered by the Law Firm. The hearing on that motion was set for September 4.

Shustak also submitted an arbitration demand to JAMS in an action titled *Shustak Reynolds & Partners, P.C. v. Joshua Weisbord and Barry Weisbord* (JAMS case No. 1240023924" (Arbitration Action)). Pursuant to JAMS' joint arbitrator process, on or about April 27 Abby Silverman was appointed as sole arbitrator and was confirmed by the parties.

### D. *Arbitration Action*

On June 12, while Shustak's motion to compel arbitration was pending in the superior court, the parties and their counsel participated in a conference call with Silverman and selected hearing dates of November 16 through 20, 2020. Silverman noted Shustak already had submitted its claims to JAMS, and that the Weisbords would "submit their response and counter claims, if any, five business days after the Superior Court's ruling on the Motion [to compel arbitration set for hearing on September 4]." When the parties selected the November hearing dates, the trial in the Wrongful Termination Lawsuit was set for October 2020.

On August 12, 2020, the parties stipulated their "entire dispute, including all claims asserted in the complaint and cross-complaint" in the superior court action, would be resolved by "final and binding arbitration before JAMS in the pending JAMS arbitration." The stipulation confirmed that the Arbitration Action would be heard on November 16 through 20.

In addition, the stipulation provided the September 4 hearing on Shustak's motion to compel arbitration would be vacated; the superior court action would be stayed "pending the conclusion of the JAMS arbitration for

5

purposes of either side pursuing any post-arbitration proceedings before JAMS"; following the conclusion of arbitration, the parties would "advise the Court whether any post-arbitration matters shall be addressed"; and the trial court would retain jurisdiction over the parties "to adjudicate any post-arbitration matters." On August 14, 2020, Judge Whitney entered an order adopting the terms of the parties' stipulation, thus staying the superior court action.

Also on August 14 in the separate Wrongful Termination Lawsuit, due to the ongoing pandemic Judge Strauss—on the court's own motion—continued the trial date in that action from October 2020 to March 2021.[3]

On August 25, the Weisbords filed an answer and Joshua a cross-complaint[4] in the Arbitration Action. Joshua's cross-complaint included a negligence cause of action as well as the same three causes of action he had alleged in his filing in the superior court.

---

[3] According to the Register of Actions in the Wrongful Termination Lawsuit (attached as an exhibit in opposition to the Weisbord's Motion to Vacate the Arbitration Award), Judge Strauss continued the trial in the Wrongful Termination Lawsuit to February 26, 2021.

For reasons that are unclear, the orders filed in the Arbitration Action, the pleadings filed in the superior court to affirm the award, and the Weisbords' appellate brief states the trial was continued to March 2021.

Whether the trial was continued to February or March 2021, both dates were after the already scheduled November 2020 arbitration hearing, and thus this discrepancy does not impact the conclusions we reach in this appeal. For ease of reference we use the March 2021 date.

[4] The arbitrator noted the JAMS' "convention" was to refer to claims in a cross-complaint as "Counterclaims" and deemed Joshua's claims as "non-compulsory."

## 1. Continuance of the Arbitration Action

On September 16, the Weisbords sought a continuance of all claims in the Arbitration Action "to a date after the jury trial" in the Wrongful Termination Lawsuit. Shustak opposed the continuance of its claims, but not Joshua's claims against the Law Firm.

In Silverman's Interim Status Conference Report and Order dated September 22 (September 22 Order), the arbitrator noted the Weisbords' request for a continuance of all claims had been "thoroughly argued" and the Weisbords had the burden to show "good cause" for the continuance.

The September 22 Order included a lengthy summary of the request for continuance. The arbitrator acknowledged that on June 12, when the parties agreed to the November arbitration hearing dates, the trial in the Wrongful Termination Lawsuit was to commence "in October 2020." However, "through no fault of [the Weisbords]," and because of the shutdown in the superior courts caused by the pandemic, the trial in the Wrongful Termination Lawsuit was ultimately continued to March 2021.

The September 22 Order continued: the Weisbords allege negligence as an affirmative defense and "negligence is the thrust of [Joshua's] Counterclaims. They argue that . . . if the [arbitration] goes forward in November they will be deprived of a jury verdict in the *Turtle Beach* litigation that could mitigate their losses by recovering damages and attorney fees in that case; they run the risk of inconsistent rulings related to either fees or negligence; and they will be subject to the argument that the tort damages claimed are speculative."

In opposition, Shustak argued the Weisbords should have known on June 12—when they agreed to the arbitration dates—that it was likely there would be additional delays in the trial of the Wrongful Termination Lawsuit

7

due to the pandemic. Shustak also asserted that by August 25, when the Weisbords filed their affirmative defenses and Joshua his claims against Shustak in the Arbitration Action, they knew the trial date in the Wrongful Termination Lawsuit had been continued to March 2021, well after the upcoming November arbitration hearing.  To enforce the policy of arbitration as an efficient and cost effective adjudication of disputes, Shustak argued the continuance of its claims should be denied.

In her order, Silverman recognized she had discretion to continue the arbitration and that in exercising such discretion she was required to "balance the promise of a swift, efficient and just outcome from arbitration against the prejudice to the moving parties."  Examining first the timing of the Weisbords' request for a continuance, the arbitrator noted it came *less* than a month after *they* had agreed to arbitrate the "entire dispute."

Silverman next examined the benefits the Weisbords argued supported their request for a continuance.  The arbitrator found these alleged benefits—"mitigating damages" and avoidance of "potential inconsistent verdicts" and "speculative" damages"—"uncertain outcomes in terms of their likelihood and their timing."  She thus found the "speculative benefits" for a continuance did not outweigh the "prejudice to all parties from the certain delay, inconvenience, additional costs and dislocation from a five month continuance."

Silverman also addressed whether the continuance was warranted due to the pandemic.  The arbitrator acknowledged those effects were outside the Weisbords' control, but noted the timing of the filing of the pleadings providing the justification for the continuance was within their control.  As such, in "balancing the equities" the arbitrator found the "effect of the pandemic is not persuasive," and ruled the Weisbords failed to meet their

burden to demonstrate sufficient cause justifying a continuance of the Arbitration Action.

The September 22 Order was made "without prejudice" of the parties agreeing to continue the hearing on Joshua's claims against Shustak. As requested by the parties, on September 30 Silverman entered an order withdrawing Joshua's claims. Shustak agreed to toll the applicable statute of limitations as to "all claims in the Counterclaim from the date of this Order to April 31, 2021." The parties also agreed that if, during the tolling period or thereafter, Joshua reasserted his claims against Shustak, "for judicial economy" they would be submitted to binding arbitration in JAMS and to the extent possible, would be adjudicated by Silverman.

### 2. Dispute Concerning Attorney Witnesses on the Weisbords' Witness List

On September 11, 2020, Shustak filed a motion asking the arbitrator to compel the Weisbords to produce documents and/or limit witness testimony. The motion was the result of a discovery dispute between the parties that arose after the Weisbords identified five or six attorneys as witnesses they expected to testify at the arbitration hearing and listed 266 documents on a privilege log that were "communications" between the Weisbords and these attorneys.[5]

In its motion, Shustak argued it would be unfair for the Weisbords to present the testimony of the attorney witnesses while at the same time

---

[5] Silverman noted the five attorneys were Mr. Rosen, Joshua's first attorney of record in the Wrongful Termination Lawsuit; John Mayers, who worked with Shustak and jointly represented Joshua in that Wrongful Termination Lawsuit; a personal business lawyer of the Weisbords; and Steve Glickman and his associate, who were the successor lawyers in the Wrongful Termination Lawsuit after Shustak withdrew as counsel of record.

preventing the Law Firm from obtaining discovery of documents relevant to these witnesses. In support, Shustak argued that the attorney testimony would likely involve the "quantity and quality" of Shustak's work on behalf of Joshua in the Wrongful Termination Lawsuit, which was the "core" of the parties' Fee Dispute.

The Weisbords responded the 266 documents were protected from disclosure by the attorney-client privilege and the attorney witnesses could testify about Shustak's fees and any set-offs without revealing confidential information.

After receiving additional briefing from the parties, on October 8 Silverman granted in part Shustak's motion, giving the Weisbords the option of either (1) producing the requested documents of the attorney witnesses the Weisbords intended to call; or (2) removing the attorneys from their witness list. The arbitrator reasoned the Weisbords would "likely" elicit testimony from these witnesses in an attempt to show that the Weisbords did not get the "benefit of their bargain, that Shustak's work was subpar, that it overpromised, and that it overbilled" them. The arbitrator could not "envision a scenario where the five attorneys can circumscribe their testimony about fees and set-offs without revealing their communications with the Weisbords."

Silverman also noted the law required her to balance "the sanctity of the attorney client privilege with principles of fundamental fairness" when, as here, the client and attorneys have "interacted" on the "subject of litigation." Balancing these interests, the arbitrator found "fundamental fairness requires a finding that the Weisbords impliedly waived the attorney client privilege when [they] informed Shustak that [they] would call five or six former and current attorneys to testify at the Arbitration Hearing."

10

Silverman, however, noted the implied waiver was limited and applied only "to testimony given in preparation for and presentation in this Arbitration and to documents that are on the Weisbords' privilege log." The Weisbords ultimately elected not to call any of the attorney witnesses.

### 3. Final Award

The arbitration hearing took place as planned on November 16 through 20. The parties agreed the hearing would be unreported and the hearing was conducted remotely on the JAMS platform. The following witnesses agreed to provide testimony at the arbitration: For the Weisbords: Joshua, Barry, and their retained attorney fees expert, Kim Karelis; and for Shustak: Erwin Shustak, George Miller, and Paul Reynolds.

On December 22, Silverman issued an eight-page final award, as modified (Final Award). The Final Award set out Shustak's claims against the Weisbords, and the Weisbords' affirmative defenses against the Law Firm, including lack of consideration on the personal guarantee signed by Barry and set-off on the contract claims.

### a. Factual Findings

Shustak was the second attorney of record in the Wrongful Termination Lawsuit, after Mr. Rosen withdrew from Joshua's representation in early 2019. Throughout Shustak's representation of Joshua, it was understood that Barry would pay the fees under the terms of the Fee Agreement. Barry did so until October 2019.

Barry initially paid Shustak's invoices within a few days of receipt. In June 2019, Shustak began providing invoices twice each month, and "agreed to accept as timely payments made within 30 days of receipt." Other than Joshua questioning an entry on a September 19 invoice when Shustak billed for three attorneys' participation in a single mediation session, there was "no

11

evidence that either of the Weisbords questioned the amount of the overall fees."

The Wrongful Termination Lawsuit had been "contentious" even before Shustak substituted into the case, as a discovery referee had been assigned, a cross-complaint was pending against Joshua, and "Shustak inherited voluminous and not well organized records." Once in the case, Mr. Miller was the "lead lawyer" and he enlisted other Shustak attorneys including Mr. Reynolds, a paralegal, and others to assist as needed. Shustak defended and brought discovery motions, appealed the rulings of the discovery referee, defended a dispositive motion and sanctions motions, took and defended depositions, prepared for and participated in a meditation, and geared up for trial.

Joshua was "involved in all aspects of the case" including participating in "most meetings about strategy and priority"; "held strong opinions" about the case; and "harbored unusual animosity and distrust" of legal counsel of his former employer. Until August 26, 2019, the day of the mediation, there was no evidence Joshua was dissatisfied with Shustak's representation, including the firm's responsiveness to his concerns and the invoices it generated.

After the mediation, the relationship between Shustak and the Weisbords "changed" and not for the better. Specifically, based on conflicting testimony concerning the mediation,[6] Shustak's evaluation of the merits and the value of Joshua's case were different from those held by Joshua. Both Joshua and Barry testified during the arbitration that they were "angry and

_____

[6] The parties agreed to waive the law preventing the disclosure of communications and writings made in connection with and during a mediation. (See Evid. Code, § 1115 et seq.)

12

disappointed" by the mediation. Mr. Shustak testified that he also was disappointed by the outcome of the mediation because he did not think the Weisbords understood the opportunity it presented. Post-mediation communications from Shustak to the Weisbords extolled the benefits of settlement and warned of the "financial, emotional and reputational toll" if Joshua lost at trial. Joshua, however, pressed Shustak to continue trial preparation and on October 7, he called off all settlement efforts, while acknowledging the "risks" of continuing the Wrongful Termination Lawsuit against his former employer.

After the unsuccessful mediation, the parties commenced expert discovery and continued trial preparation. Because of mounting fees, Shustak requested an additional retainer of $150,000. Joshua assured Shustak his father would pay the retainer, but none was ever paid.

In late September 2019, the trial in the Wrongful Termination Lawsuit was continued to January 6, 2020 and subsequently to March 2021, due to the pandemic and the inability of the superior courts to conduct jury trials. Shustak's October 2, 2019 invoice shows a partial payment of the September 19 invoice and for the "first time" an unpaid balance aged over 30 days of about $36,000. The October 21 and November 6 invoices show the aged receivables increased to about $70,000 and $164,000, respectively, and the latter invoice showed Shustak then was owed about $288,000. Internal emails from Shustak showed "concern over payment." Joshua's emails encouraged the Law Firm to continue with trial preparation, "while the Weisbords' messages to each other demonstrate[d] a lack of confidence in the Firm."

The parties' differing views regarding the value of the Wrongful Termination Lawsuit and its handling came to a head on November 4 when

13

Mr. Shustak wrote the Weisbords that, unless they paid by November 7 the outstanding balance owed the Law Firm, it would cease work on the Wrongful Termination Lawsuit. When Shustak received neither a payment nor a response, it informed the Weisbords that it would stop "all but the most critical work" and move to withdraw as counsel of record. The Law Firm petitioned for a stay of the trial and moved to withdraw as counsel of record. On November 22, the trial court denied the stay but granted the motion to withdraw.

### b. Damages

Silverman found Shustak proved by a preponderance of the evidence that the Weisbords breached the Fee Agreement and rejected the Weisbords' affirmative defenses, none of which they raise as error on appeal.[7]

On the issue of damages, the arbitrator found (1) the entries on Shustak's final invoice were not unconscionable charges; (2) the Weisbords did not contest any billings until the meditation, when they questioned the need for three Shustak attorneys to attend; (3) Shustak accommodated this concern by writing-off the entries of Mr. Miller for the meditation; and (4) any billing errors—including duplicative charges—could be reversed (with interest repaid) but such errors were "*not* evidence of unconscionability." (Italics added.)

Silverman awarded Shustak damages as follows: legal fees of $288,218 from April 3 to November 22, 2019; costs of $5,888.43; prejudgment interest of $30,913 through December 20, 2020; less $2,612.50 (for a stipulated

---

[7] A "court's power to correct or vacate an erroneous arbitration award is closely circumscribed." (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775-776.) In this case, the Weisbords limit their claims of error on appeal to subdivision (a)(5) of section 1286.2, as discussed *post*.

duplicative time billing entry identified during the arbitration hearing); for a total award of $322,152.43 (i.e., the Arbitration Award).

### E. *Affirmance of the Arbitration Award*

Shustak sought to confirm and the Weisbords to vacate/correct the Arbitration Award. The competing motions were heard by Judge Whitney on March 19, 2021.

At the March 19 hearing, the Weisbords argued the Arbitration Award should be vacated because Joshua's claims for negligence and breach of fiduciary duty were "intertwined" with the Wrongful Termination Lawsuit, as they claimed Shustak's work in the Wrongful Termination Lawsuit had been "deficient" and had to be "redo[ne]" by successor counsel. The Weisbords further argued that through "no fault of [their] own," the arbitrator had heard only about "half" of the evidence of the parties' Fee Dispute because the arbitrator had refused their request to continue the Arbitration Action until after the trial in the Wrongful Termination Lawsuit was complete; and that as a result, they were prejudiced by not being able to call their attorneys witnesses to testify, as to do so would risk disclosure of attorney-client communications.

Shustak asserted the trial court's review of the Arbitration Award was severely limited including the arbitrator's decision refusing to continue the proceeding. The Law Firm also asserted that on August 12 the Weisbords had agreed to have the parties' "entire dispute" resolved through arbitration; and on August 25, when the Weisbords filed their answer and Joshua his claims against Shustak in the Arbitration Action, they knew that Judge Strauss already had continued the trial in the Wrongful Termination Lawsuit to March 2021. The Law Firm further maintained that when the arbitrator

15

refused to continue the proceeding, Joshua withdrew his claims subject to having them arbitrated in the future.

In its March 19 minute order Judge Whitney affirmed his earlier tentative to deny the motion to vacate the Arbitration Award. As relevant in this appeal, the trial court found that, while the Weisbords did not cause the delay in the trial of the Wrongful Termination Lawsuit, "due to the COVID pandemic" they "*knew* of the delay *before* [Joshua] filed [his] cross-complaint" in the Arbitration Action. (Italics added.) The trial court also found the arbitrator properly balanced the interests of the parties when considering whether to grant the continuance; and that Joshua, in any event, was not "substantial[ly] prejudice[d]" by the arbitrator's denial of the continuance because he still had the right to arbitrate his claims against Shustak.

## DISCUSSION

### A. *Review of an Arbitrator's Decision*

"California law favors alternative dispute resolution as a viable means of resolving legal conflicts. 'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.'" (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*).)

Judicial review of an arbitration award is limited to "circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 12 (*Moncharsh*); see *Heimlich v. Shivji* (2019) 7 Cal.5th 350, 367 (*Heimlich*).) Courts therefore "will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.] [¶] Thus, it is the general rule

16

that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Moncharsh*, at p. 11; *Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 408 ["To promote [arbitration], the law minimizes judicial intervention in the proceedings, in part, by the doctrine of arbitral finality."].)

Section 1286.2, part of the California Arbitration Act (§ 1280 et seq.), sets forth grounds for vacating an arbitration award. Subdivision (a) of section 1286.2 provides in relevant part: "[T]he court shall vacate the award if the court determines any of the following: [¶] . . . [¶] (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy . . . ." (§ 1286.2, subd. (a)(5); see *SWAB Financial v. E\*Trade Securities LLC* (2007) 150 Cal.App.4th 1181, 1195-1196 (*SWAB*) [section 1286.2 "is an exception to the general rule precluding judicial review" of an arbitration award]; *Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 439 (*Hall*) ["Section 1286.2, subdivision (a)(5) is a safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case."].)

We review de novo a trial court's order denying a petition to vacate an arbitration award. (*Richey, supra*, 60 Cal.4th at p. 918, fn. 1; *SWAB, supra*, 150 Cal.App.4th at p. 1196 [applying de novo review to a trial court's order vacating or correcting an arbitration award].) However, to the extent a trial court's ruling on an arbitration award is based on a determination of disputed material facts, we apply the substantial evidence test. (*SWAB*, at p. 1196; *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 55-56.)

17

## B. *Continuance of the Arbitration Action*

### 1. Guiding Principles

As the trial court and arbitrator in the instant case correctly observed, the decision whether to continue an arbitration lies in the first instance with the arbitrator. Section 1282.2 provides in part:

> "Unless the arbitration agreement otherwise provides, or unless the parties to the arbitration otherwise provide by an agreement which is not contrary to the arbitration agreement as made or as modified by all the parties thereto: [¶] . . . [¶] (b) The neutral arbitrator *may* adjourn the hearing from time to time as necessary. On request of a party to the arbitration for good cause, or upon his own determination, the neutral arbitrator *may* postpone the hearing to a time not later than the date fixed by the agreement for making the award, or to a later date if the parties to the arbitration consent thereto." (Italics added.)

" 'Courts routinely construe the word "may" as permissive and words like "shall" or "must" as mandatory.' " (*Mijares v. Orange County Employees' Retirement System* (2019) 32 Cal.App.5th 316, 329; *SWAB, supra,* 150 Cal.App.4th at p. 1197 ["The word 'may' [in section 1282.2] is permissive rather than mandatory."].)

"[W]hen, as here, an arbitrator exercises discretion in denying a continuance request, there are two issues to be resolved in vacatur proceedings. First, the trial court must determine whether the arbitrator abused his or her discretion by refusing to postpone the hearing upon sufficient cause being shown. Second, if there was an abuse of discretion, the trial court must determine whether the moving party suffered substantial prejudice as a result. Moreover, on appeal from the trial court's order granting or denying a request to vacate the arbitration award, our review is de novo. In other words, . . . we must consider whether the *arbitrators* abused their discretion and there was substantial prejudice in denying

18

plaintiff's continuance motion. Only if the arbitrators abused their discretion and there was resulting prejudice could the trial court properly vacate the arbitration award. As noted, in the face of disputed evidentiary matters, we apply the differential substantial evidence test." (*SWAB, supra,* 150 Cal.App.4th at p. 1198.)

## 2. Analysis

We independently conclude the trial court did not err in ruling the arbitrator properly exercised her discretion in finding the Weisbords failed to establish "good" or "sufficient" cause for a continuance. (See §§ 1282.2, 1286.2, subd. (a)(5); *SWAB, supra,* 150 Cal.App.4th at p. 1197 [recognizing that "courts will not interfere in an arbitrator's postponement decision if any reasonable basis exists for the arbitrator's ruling"]; see *ibid.* [" 'Because the primary purpose for the . . . policy of favoring arbitration is to promote the expeditious resolution of disputes, a court's review of the arbitrator's decision to postpone or not postpone the hearing is quite limited.' "], quoting *ARW Exploration Corp. v. Aguirre* (10th Cir. 1995) 45 F.3d 1455, 1463-1464.)

As summarized *ante*, the Weisbords made their request for a continuance on September 16, after they had agreed to submit their "entire dispute" to arbitration on August 12, and after they filed their affirmative defenses, and Joshua his claims against Shustak, in the JAMS arbitration on August 25. Judge Whitney found the Weisbords *knew* before August 25 that, due to the pandemic, the trial in the Wrongful Termination Lawsuit already had been continued to March 2021. While the arbitrator recognized the trial continuance was outside the Weisbords' control, she found the timing of their decision to file their "pleadings that provide the justification" for the continuance request within their control.

19

Moreover, in "balanc[ing] the interests of the parties" in determining whether "good" or "sufficient" cause existed for the continuance, the arbitrator found the "benefits" of granting the continuance speculative and the prejudice to all parties from about a five-month delay (until after the trial in the Wrongful Termination Lawsuit *purportedly* would be concluded) real and tangible. We find no abuse of discretion in this balancing of interests.

First, at the time the arbitrator denied the continuance, there was no way of knowing if the trial in the Wrongful Termination Lawsuit would actually go forward in March 2021. Thus, unless the arbitrator was clairvoyant, when she denied the continuance in September 2020 she had no way of knowing whether, due to the pandemic, the multi-day trial would be subject to even more delays, including as a result of the shutdown/reduced operations of the superior courts and the difficulty then of empaneling a jury.

Second, the arbitrator acted well within her discretion in finding the benefits of a continuance speculative. According to the Weisbords, these included "mitigating damages" and avoiding "potential inconsistent verdicts and speculative claims for damages." The arbitrator found these alleged benefits to be "uncertain . . . in terms of their likelihood and their timing." We agree.

The Wrongful Termination Lawsuit involved different parties and claims than the Arbitration Action. The former was a lawsuit brought by Joshua in 2017 against his prior employer. The latter was an action brought by Shustak in December 2019 against Joshua and Barry, after the Law Firm withdrew from its representation of Joshua in November 2019 for nonpayment of fees.

There is virtually no information in the record before us regarding the Wrongful Termination Lawsuit, including at a minimum the complaint and

20

cross-complaint of the parties therein.[8] We thus find it difficult to evaluate the argument advanced by the Weisbords that, because they were denied a continuance of the Arbitration Action, they were "substantially prejudiced" in the Wrongful Termination Lawsuit.

Conversely, despite the paucity of information regarding the Wrongful Termination Lawsuit, it appears that most, if not all, of the affirmative defenses raised by the Weisbords in the Arbitration Action would have little or nothing to do with the Wrongful Termination Lawsuit. For example, the Weisbords argued in the Arbitration Action (1) the Fee Agreement was "void" because (a) Mr. Miller failed to disclose his lack of jury trial experience prior to the parties entering into the Agreement and (b) Shustak misrepresented its intention to take the Wrongful Termination Lawsuit to trial if the case did not settle; (2) the personal guarantee Barry signed agreeing to pay Shustak's fees was unenforceable for lack of consideration; and (3) Shustak engaged in excessive and duplicative billing and billed for merely administrative matters. It is not clear how any of these or related issues in the Arbitration Action affected in any meaningful way the Wrongful Termination Lawsuit.

Third, unlike the speculative benefits if the continuance was granted, the arbitrator found "certain" the parties would be prejudiced by the "delay, inconvenience, [and] additional costs" of continuing the Arbitration Action.

We agree that a lengthy delay of the Arbitration Action would have prejudiced the parties, and certainly Shustak. As the record here shows, Shustak moved to arbitrate its Fee Dispute with the Weisbords in March

_____

[8] On or about December 20, 2021, Joshua filed a notice of appeal in the Wrongful Termination Lawsuit. However, neither Joshua nor Shustak has asked this court to take judicial notice of any matters arising from the Wrongful Termination Lawsuit, and we discern no reason to do so on our own motion.

2020, after Joshua filed his cross-complaint in the superior court for breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty (but not for negligence).[9] The parties thereafter agreed that Silverman would act as arbitrator and in June 2020, that the arbitration of Shustak's claims against the Weisbords would commence on November 16. In August, they further agreed that their "entire dispute" would be arbitrated at the November hearing.

Based on this agreement, the Fee Dispute between the parties was set to be heard and decided about eight months after Shustak's initial demand for arbitration, promoting the important public policy of arbitration as a "speedy" and "inexpensive" means of resolving their dispute. (See *Moncharsh, supra*, 3 Cal.4th at p. 9.) However, a requested *minimum* five-month delay in the Arbitration Action, until April 2021 *at the earliest*, would undermine the " 'strong public policy in favor of arbitration' " (*ibid.*; *Burton v. Cruise* (2010) 190 Cal.App.4th 939, 944 [it is axiomatic that California law favors arbitrations "as a relatively quick and cost-effective means to resolve disputes"]); and bring about "delays incident to a civil action" that arbitration was designed to prevent (see *Utah Constr. Co. v. Western Pac. Ry. Co.* (1916) 174 Cal. 156, 159).

Fourth, even *if* the arbitrator erred in refusing to grant the Weisbords' request for a continuance, we conclude that alleged error did not "substantially prejudice" them. (See § 1286.2, subd. (a)(5).) As noted, we

---

9    Although Joshua's claims in the Arbitration Action included negligence, the initial cross-complaint he filed in superior court did not include this cause of action. Perhaps this can be explained by the requirement in the Fee Agreement that the parties submit to "final and binding arbitration" any dispute in which Shustak "acted *negligently*" and caused Joshua "damages." (Italics added.)

22

discern little if any connection or nexus between the Wrongful Termination Lawsuit and the Arbitration Action, such that the result in one case would materially affect the other to the prejudice of the Weisbords.

Additionally, the September 22 Order provided the parties could agree to a continuance of Joshua's claims. About a week later, per their agreement the arbitrator entered an order withdrawing those claims, with Shustak agreeing to toll until April 31, 2021 any applicable statute of limitations. Joshua thus was in fact afforded a continuance of his claims, subject to the requirement he arbitrate them in JAMS to promote "judicial economy."

For this additional reason, we independently conclude the trial court did not err in refusing to vacate the Arbitration Award based on the arbitrator's exercise of discretion in denying the Weisbords' continuance request. (See *SWAB*, *supra*, 150 Cal.App.4th at p. 1200 [recognizing that after a petition to compel arbitration has been granted and a lawsuit stayed, "the arbitrator takes over" and "[i]t is the job of the arbitrator, not the court, to resolve all questions needed to determine the controversy"].)

Citing *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097 (*Kurwa*) among other authorities, the Weisbords argue Shustak's agreement to toll the statute of limitations, as part of the parties' stipulation allowing Joshua to withdraw his "non-compulsory" claims, violated California's "one final judgment" rule, inasmuch as the judgment entered in this case disposed of less than all of the claims between them. We find this argument unavailing.

*Kurwa* involved an agreement between the parties in which they dismissed without prejudice their respective defamation claims and waived the applicable statute of limitations " 'for such time as this case may come back from *appeal*.' " (*Kurwa*, 57 Cal.4th at p. 1101, italics added.) Here, conversely, Shustak merely agreed to toll the statute of limitations through

April 2021, creating "the very real risk that an applicable statute of limitations will run before the party [i.e., Joshua] is in a position to renew the dismissed cause of action." (See *id.* at p. 1106; see also *ibid.* ["But when the parties agree to waive or toll the statute on a dismissed cause of action *pending an appeal*, they establish an assurance the claim *can* be revived for litigation at the appeal's conclusion. It is that assurance—the agreement keeping the dismissed count legally alive—that prevents the judgment disposing of the other causes of action from achieving finality." (First italics added.)].)

Given that the tolling period on Joshua's claims ended more than a year ago and the parties' tolling agreement did not "*assure*[] the potential for future litigation of the dismissed claims" (see *Kurwa, supra,* 57 Cal.4th at p. 1104, italics added), we find *Kurwa* inapposite and reject the Weisbords' argument the judgment entered in this case violated the "one final judgment" rule (see also *ibid.* ["Dismissal of some counts without prejudice, by itself, does not deprive a judgment of appealability, as 'claims that are dismissed without prejudice are no less final for purposes of the one final judgment rule than are adjudicated claims.' "]).

### C. *Presentation of Evidence*

The Weisbords next argue the trial court erred in refusing to vacate the Arbitration Award because the arbitrator improperly conditioned the testimony of former and successor attorneys of Joshua in the Wrongful

Termination Lawsuit on the Weisbords'[10] disclosure of alleged attorney-client communications, including 266 documents pertaining to such witnesses. Given the risk of disclosure, the Weisbords did not call any of the attorney witnesses in the Arbitration Action.

### 1. Governing Law

The Supreme Court recently examined the scope of subdivision (a)(5) of section 1286.2 and an arbitrator's refusal to hear material evidence in *Heimlich*, *supra*, 7 Cal.5th 350. In *Heimlich*, the Supreme Court reversed the decision of the Court of Appeal vacating an arbitration award under subdivision (a)(5) of section 1286.2 for failure to consider material evidence. (*Heimlich*, at p. 356.) Although *Heimlich* noted the arbitrator *incorrectly* concluded he lacked jurisdiction to award costs to the defendant under section 998, the Supreme Court went on to hold the defendant was not entitled to relief under subdivision (a)(5) of section 1286.2. (*Heimlich*, at pp. 366-367.) *Heimlich* explained that "[m]ost legal errors in arbitration are not reviewable" (*id.* at p. 367); and therefore, that "ordinary errors in ruling on costs are not subject to correction, nor do they serve as a basis for vacating an award" (*ibid.*).

In rejecting the defendant's contention—on which the Court of Appeal had relied—that the arbitration award should be vacated under subdivision (a)(5) of section 1286.2, *Heimlich* further explained: "The exceptions to the

---

10    As did the arbitrator, we will assume the privilege holders were Joshua *and* Barry, despite the fact Joshua was the only named plaintiff in the Wrongful Termination Lawsuit. We also note the Fee Agreement expressly provided that, although Barry might pay " 'all or a portion of the legal fees, costs and disbursements incurred in connection with [the Wrongful Termination Lawsuit],' " Shustak, absent Joshua's written permission, was not to disclose any confidential or privileged information to Barry.

25

limits on review of awards protect against error that is so egregious as to constitute misconduct or so profound as to render the process unfair.  The Legislature has authorized 'judicial review in circumstances involving *serious problems* with the award itself, or with the fairness of the arbitration process.' " (*Heimlich*, *supra*, 7 Cal.5th at p. 368.)

*Heimlich* continued:  "It follows that vacation of an award for 'refusal . . . to hear evidence material to the controversy' [citation] must rest on more than a simple error in applying the rules of evidence.  As *Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1110 noted, section 1286.2 subdivision (a)(5), 'if not properly limited, could swallow the rule that arbitration awards are generally not reviewable on the merits.'  The provision is not 'a back door to *Moncharsh* through which parties may [enter and] test the validity of legal theories of arbitrators.' (*Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 438-439.)  Instead, it was designed as a 'safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case.' (*Id.* at p. 439.)  It comes into play, for example, when an arbitrator, without justification, permits only one side to present evidence on a disputed material issue.  (See *Moncharsh*, *supra*, 3 Cal.4th at p. 13.)" (*Heimlich*, *supra*, 7 Cal.5th at p. 368.)

*Heimlich* then provided the "paradigmatic example" of when an arbitrator's refusal to hear evidence will justify vacation of an award under subdivision (a)(5) of section 1286.2.  In *Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092 (*Royal Alliance*), a brokerage firm settled a client's claim regarding risky investments and then sought to have an arbitration panel expunge the allegations from the broker's public record.  At the hearing, the panel "allowed the broker to speak, unsworn and at

26

length," but denied the former client the "opportunity to cross-examine the broker or to speak herself" ostensibly because the panel "felt itself too busy to allow each side the opportunity to present evidence." (*Heimlich*, *supra*, 7 Cal.5th at p. 369, citing *Royal Alliance*, at pp. 1097-1100.) *Heimlich* noted the award in *Royal Alliance* was properly vacated because " 'the hearing was not fair. The arbitrators gave [the brokerage] an unfettered opportunity to bolster the written record but denied [the client] even a limited chance to do the same.' " (*Heimlich*, at p. 369, quoting *Royal Alliance*, at p. 1110.)

*Heimlich* compared its case to *Royal Alliance*, noting subdivision (a)(5) of section 1286.2 did not "contemplate vacation of an award merely because arbitrators refuse to consider evidence they find legally irrelevant, even if the irrelevance determination rests upon an incorrect legal foundation." (*Heimlich*, *supra*, 7 Cal.5th at p. 369.) The Supreme Court ruled to conclude otherwise and allow an arbitration award to be set aside under this statute "whenever an erroneous legal ruling results in the exclusion of evidence deemed important would undermine a foundation of the Arbitration Act, that an arbitrator's legal error ordinarily is not judicially reviewable." (*Id.* at p. 370.)

### 2. Analysis

As noted, the Weisbords argue the arbitrator prevented them from presenting "evidence material to the controversy." (See § 1286.2, subd. (a)(5).) We disagree.

First, as an initial matter we have no way of knowing if the testimony of any of the attorney witnesses was "*material*" to the Fee Dispute between the Weisbords and Shustak. (See § 1286.2, subd. (a)(5) [a court shall vacate an award if the party was "substantially prejudiced . . . by the refusal of the arbitrators to hear evidence *material* to the controversy"], italics added.)

27

Other than the arbitrator's very brief description regarding the *likely* testimony the Weisbords would elicit from these witnesses—that Shustak's "work" was "subpar," that it "overpromised" and "overbilled" the Weisbords, and that they did not get the "benefit of their bargain"—we have no offers of proof or anything similar to gauge the importance, if any, of the attorney witnesses' proposed testimony.

Second, for similar reasons we have no way of determining whether the Weisbords were "substantially prejudiced" by the arbitrator's ruling. (See § 1286.2, subd. (a)(5).) The Weisbords did not include the privilege log or any of the 266 documents listed on that log in the record (sealed or otherwise). We thus have no way of analyzing whether the arbitrator erred in tethering the attorney testimony to the Weisbords' disclosure of these documents and other potential confidential communications between attorney and client.[11]

Third, the Weisbords offered the expert witness testimony of Mr. Karelis, who, according to the arbitrator, did an "extensive analysis of the reasonableness of the charges from the outset of [Shustak's] representation" of Joshua. Mr. Karelis testified that if the "fee agreement is an enforceable contract the actual contract terms of the agreement govern the measure of damages in the event of breach"; and that "charges for attorney time in meetings with or requested by" Joshua were properly billed by Shustak. The arbitrator found that other criticisms of Mr. Karelis regarding Shustak's billings, such as vague and duplicative entries, were "dealt with after client inquiry."

---

[11] Moreover, the record is silent whether the Weisbords submitted any of the 266 documents to the arbitrator for (in camera) review prior to her ruling, or whether they asked the trial court to conduct such a review in connection with their motion to vacate the Arbitration Award.

28

In affirming the Arbitration Award, the trial court declined to "second guess the reasons the arbitrator apparently believed Plaintiff [Shustak] over Defendants' expert, Kim Karelis" when determining the amount of fees owed to the Law Firm. Nor will this court. (See *Moncharsh*, *supra*, 3 Cal.4th at p. 11 [courts may neither review the validity of the arbitrator's reasoning nor the sufficiency of the evidence supporting an arbitrator's award].)

Fourth, the arbitrator did not "refus[e]" to "hear evidence material" to the Fee Dispute. To the contrary, she ruled fundamental fairness required the Weisbords could call one or more, if not all, of the attorney witnesses so long as the Weisbords produced documents on their privilege log pertaining to the attorneys who provided such testimony. Although we conclude this was a reasonable exercise of the arbitrator's discretion (see *Moncharsh*, *supra*, 3 Cal.4th at p. 11; *SWAB*, *supra*, 150 Cal.App.4th at pp. 1195-1196), even assuming legal error the arbitration's decision is not reviewable, as we also conclude the error did not prevent the Weisbords from fairly presenting their side of the dispute, including by presenting the expert testimony of Mr. Karelis (see *Heimlich*, *supra*, 7 Cal.5th at pp. 369-370 [noting an arbitration award cannot be set aside based on "a simple error in applying the rules of evidence," and further noting a contrary rule "would undermine a foundation of the Arbitration Act, that an arbitrator's legal error ordinarily is not judicially reviewable"]; *Hall*, *supra*, 18 Cal.App.4th at p. 439 [the *arbitrary* refusal to admit "evidence material to the controversy," as set forth in subdivision (a)(5) of section 1286.2, is a " 'safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case' "]).

## DISPOSITION

The judgment is affirmed. Shustak to recover its costs of appeal.

HALLER, Acting P. J.

WE CONCUR:

O'ROURKE, J.

DATO, J.